**MARQUISE INVESTMENT, INC.**

v.

**CITY OF PITTSBURGH and Pittsburgh City Council, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Nov. 9, 2010.

Decided Dec. 30, 2010.

---

608

Lawrence H. Baumiller, Asst. City Solicitor, Pittsburgh, for appellants.

Clifford B. Levine, Pittsburgh, for appellee.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

The City of Pittsburgh and Pittsburgh City Council (collectively, the City) appeal the November 23, 2009 order of the Court of Common Pleas of Allegheny County (trial court) granting the conditional use application filed by Marquise Investment, Inc. (Marquise). The issue now before the Court is: whether the burden of proving that there was no harm to the health, safety and welfare of the community shifted back to Marquise (1) where medical professionals testified that the location of a proposed adult cabaret would adversely affect the recovery of the members of a nearby social club for recovering alcoholics and drug addicts; and/or, (2) where community members provided significant testimony regarding existing traffic problems. For the reasons that follow, we affirm the order of the trial court.

## I. Background

Under Section 911.02 of the Pittsburgh Zoning Code updated June 19, 2009 (Pittsburgh Code), adult entertainment is permitted as a conditional use in the City's Urban Industrial (UI) zoning districts. According to Pittsburgh Code Chapter 926, Adult Entertainment "means an Adult Cabaret or Adult Theater." Reproduced Record (R.R.) at 9a. Adult Cabaret is defined as "a cabaret which features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers which characterize an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas as defined herein." R.R. at 9a–10a.

On June 6, 2008, Marquise filed a conditional use application with the City for the operation of an adult cabaret at 1635 West Carson Street, a property located in a Pittsburgh UI zoning district, which consists of a 5,000 square foot structure that formerly housed a medical office. The business will cater to gentlemen between 21 and 50 years of age. Marquise will operate the cabaret between 9:00 p.m. and 4:00 a.m., seven days per week. It will offer food and non-alcoholic beverages; no alcoholic beverages will be permitted on the premises, unless the Marquise applies for a liquor license, or at some point decides to permit its guests to bring their own alcoholic beverages. The Onala Club, a non-profit social club for recovering alcoholics and drug addicts, is located within 80 feet of the proposed use.

In accordance with Section 922.06.A–B. of the Pittsburgh Code, Marquise's conditional use application was submitted to the City's Planning Commission for its recommendation. A public hearing was held before the Planning Commission on November 18, 2008, at which the City's zoning administrator presented a Conditional Use Report, testimony was provided by Marquise principal Patrick Risha (Risha), and letters and testimony were provided by numerous objectors, including residents and representatives of New Life Fellowship Church and the Onala Club. The Planning Commission recommended that City Council deny Marquise's application.

Despite the fact that Section 922.06.-D.1. of the Pittsburgh Code requires Pittsburgh City Council to hold a public hearing within 45 days of the Planning Commission's action on a conditional use application, Council failed to hold a hearing, which resulted in a deemed denial of Marquise's application. Marquise filed an appeal with the trial court, which remanded the matter to the Council for a hearing. Council, once again, failed to hold a hearing. The trial court entered an order on September 16, 2009 vacating its order of remand and taking jurisdiction of the case. The trial court held a *de novo* hearing on October 13, 2009, and accepted evidence presented to the Planning Commission, an affidavit from Risha with supplemental testimony and documentation in support of Marquise's application, and argument from Marquise and the City. None of the objectors appeared before the trial court.[1] On November 23, 2009, the trial court granted Marquise's application. The City appealed to this Court.[2]

## II. Harm to Health, Safety and Welfare

On appeal, the City argues that it presented substantial evidence of a high degree of probability that the proposed strip club would cause harm to the health, safety and welfare of the community, and Marquise did not meet its burden of rebutting that evidence. We disagree.

■ Section 913.2 of the Pennsylvania Municipalities Planning Code (MPC)[3] authorizes municipalities to make exceptions to their zoning ordinances, in the form of conditional uses,[4] as long as the ordinances set forth express standards and criteria governing such exceptions.[5] "[T]he exis-

---

1. .The objectors are not parties to this action.

2. Where the trial court takes additional evidence on appeal from the denial of a conditional use permit,

   it must determine the case *de novo*, making its own findings of fact based on the record before the Board as supplemented by the additional evidence, and this Court must then determine on appeal whether the trial court, rather than the [Council], committed an abuse of discretion or an error of law. The trial court abuses its discretion if its findings are not supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

   *K. Hovnanian Pa. Acquisitions, LLC v. Newtown Twp. Bd. of Supervisors*, 954 A.2d 718, 722 n. 1 (Pa.Cmwlth.2008) (citation omitted).

3. Act of July 31, 1968, P.L. 805, *as amended*, added by Section 93 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10913.2.

4. Conditional uses and special exceptions are both uses conditionally permitted by zoning ordinances. They differ only in the fact that conditional uses fall under the jurisdiction of a municipal governing body, while special exceptions are decided by zoning hearing boards. "The law regarding conditional uses and special exceptions is virtually identical." *Sheetz, Inc. v. Phoenixville Borough Council*, 804 A.2d 113, 115 n. 5 (Pa.Cmwlth.2002).

5. The MPC does not apply to cities of the first and second class, which are Philadelphia and Pittsburgh, respectively. *See* Section 107(a) of the MPC, 53 P.S. § 10107(a); *see also* Section 10913.2 of the MPC. However, "con-

tence of a conditional use provision in a zoning ordinance indicates legislative acceptance that the use is consistent with the zoning plan and a use application should only be denied where the adverse impact on the public interest exceeds that which might be expected in normal circumstances." *In re McGlynn*, 974 A.2d 525, 537 (Pa.Cmwlth.2009).

> In addressing an application for a conditional use, a local governing body must employ a shifting burden of persuasion. First, the applicant must persuade the local governing body its proposed use is a type permitted by conditional use and the proposed use complies with the requirements in the ordinance for such a conditional use. Once it does so, a presumption arises the proposed use is consistent with the general welfare. The burden then shifts to objectors to rebut the presumption by proving, to a high degree of probability, the proposed use will adversely affect the public welfare in a way not normally expected from the type of use.

*Aldridge v. Jackson Twp.*, 983 A.2d 247, 253 (Pa.Cmwlth.2009) (citations and footnote omitted).

The City cites *Bray v. Zoning Board of Adjustment*, 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980) in support of its position that, "[o]nce evidence is presented by objectors regarding any possible detriment to the health, safety and general welfare of the community, the applicant again regains the burden o[f] persuasion." City Br. at 16. In *Bray*, this Court clarified the rules regarding the duty to present initial evidence (duty) and the burden of persuasion (burden) in special exception (and, consequently, conditional use) cases. The Court outlined the following rules.

[With respect to:] Specific requirements, e.g., categorical definition of the [conditional use] as a use type or other matter, and objective standards governing such matter as a [conditional use] and generally: The applicant has both the duty and the burden.

[With respect to:] General detrimental effect, e.g., to the health, safety and welfare of the neighborhood: Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.

[And with respect to:] General policy concern[s], e.g., as to harmony with the spirit, intent or purpose of the ordinance: Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

*Id.*, 410 A.2d at 913 (citation omitted). According to *Bray*, therefore, both the burdens of proof and persuasion as to the detrimental effect or general policy concerns about a conditional use are always on the objector. The burden of persuasion as to the health, safety and welfare concerns raised by objectors is on objectors unless the terms of the ordinance provide otherwise. In this case, while adult entertainment, including operating an adult cabaret, is permitted as conditional use in UI zoning districts, ordinance terms have not placed the burden of persuasion on applicants with respect to detrimental effects on health, safety and welfare.

Section 911.04.A.1 of the Pittsburgh Code makes such conditional uses subject to the following specific standards:

(a) Separation From Other Adult Entertainment Uses

---

ditional use applications in these municipalities will be governed by the same general principles applicable to [MPC] Municipali-

ties." Robert S. Ryan, *PA Zoning Law & Practice* § 5.1.5 at 8 (George T. Bisel Co., Inc. Supp. 2004).

The building housing an Adult Entertainment use shall not be located within one thousand (1,000) feet of any of the following uses: Adult Entertainment uses, Amusement Arcade, Hotel/Motel, bar or nightclub or Gaming Enterprise. This one thousand-foot area shall be defined by a radius of one thousand (1,000) feet from the center point of the subject building. This separation distance requirements may be waived upon a determination of the following:

(1) That the proposed use shall not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this Zoning Code shall be observed;

(2) That the establishment of an additional regulated use in the area shall not be contrary to any program of neighborhood conservation nor shall it interfere with any program of urban renewal; and

(3) That all applicable regulations of this Zoning Code shall be observed.

(b) Separation From Other Uses

The building housing an Adult Entertainment use shall be located at least five hundred (500) feet from the following uses. The five hundred-foot area shall be defined by a radius of five hundred (500) feet from the property line of the subject building:

(1) Religious Assembly;

(2) Library;

(3) Cultural Service;

(4) Child Care Center;

(5) Elementary or Secondary School;

(6) Community Center;

(7) Single–Unit Detached Residential;

(8) Single–Unit Attached Residential;

(9) Two–Unit Residential;

(10) Three–Unit Residential; and,

(11) Public Assembly (General).

(c) Prohibited Activities

An Adult Entertainment use shall not be conducted in any manner that provides the observation of any material depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas', from any public right-of-way. This provision shall apply to any display, decoration or show window.

(d) Operational Standards

(1) Establish a minimum size space for adult cabaret performance.

(2) Establish a minimum size space for showing movies or videos.

(3) Stages are required for all live entertainment.

(4) A floor layout of premises is required that ensures that the manager has visual control of the premises.

(5) Operating days and hours shall be specified.

(6) Access control measures shall be specified.

(7) Posting and enforcement of a 'no-loitering' policy is required.

(8) All Adult Entertainment establishments shall be licensed with the Bureau of Building Inspections.

R.R. at 2a–4a.

While specific conditions applicable to adult cabarets in the City are spelled out in Section 911.04 of the Pittsburgh Code, Section 922.06.E. of the Pittsburgh Code lists general criteria for conditional uses. Section 922.06.E.1 states:

City Council shall approve Conditional Uses only if (1) the proposed use is determined to comply with all applicable requirements of this Code and with the adopted plans and policies of the City and (2) the following general criteria are met:

(a) That the development will not create detrimental visual impacts, such that the size and visual bulk of the proposed development is determined to create an incompatible relationship with the surrounding built environment, public streets and open spaces and land use patterns;

(b) That the development will not create detrimental transportation impacts, such that the proposed development is determined to adversely affect the safety and convenience of residential neighborhoods or of vehicular and pedestrian circulation in the vicinity of the subject tract, including traffic reasonably expected to be generated by the proposed use and other uses in the area given the existing zoning, existing land uses and proposed land uses in the area;

(c) That the development will not create detrimental transportation impacts, such that the proposed development will result in traffic volumes or circulation patterns that exceed the capacity of streets and intersections likely to be used by traffic to and from the proposed development;

(d) That the development will not create detrimental operational impacts, including potential impacts of hours of operation, management of traffic, servicing and loading operations, and any on-site operations associated with the ongoing functions of the use on the site, in consideration of adjacent and surrounding land uses which may have differing sensitivities to such operational impacts;

(e) That the development will not create detrimental health and safety impacts, including but not limited to potential impacts of noise, emissions, or vibrations from the proposed development, or functions within the proposed site which would otherwise affect the health or safety of others as a direct result of the operation of the proposed use;

(f) That the development will not create detrimental impacts on the future and potential development of parcels in the vicinity of the proposed site of the development; and

(g) That the development will not create detrimental impacts on property values.

R.R. at 7a.

■ Where, as here, the terms of an ordinance have not expressly placed the burden of persuasion regarding general detrimental effects to the health, safety and welfare on an applicant, the applicant has the burden of persuasion only for specific requirements, while objectors have the burden as to all general policy concerns and general detrimental effects. *See Spencer v. McKean Twp. Zoning Hearing Bd.*, 113 Pa.Cmwlth. 521, 537 A.2d 943 (1988). Thus, an applicant for a conditional use need only prove "specific, objective conditional use criteria set forth in the zoning ordinance." *Aldridge*, 983 A.2d at 259. In *Bray*, this Court classified what it deems specific requirements as follows:

1. The kind of use (or area, bulk, parking or other approval) i.e., the threshold definition of what is authorized as a special exception;

2. Specific requirements or standards applicable to the special exception e.g., special setbacks, size limits; and

3. Specific requirements applicable to such kind of use even when not a special exception e.g., setback limits or size maximums or parking requirements applicable to that type of use whenever allowed, as a permitted use or otherwise.

*Bray*, 410 A.2d at 911.

There is no dispute in this case as to the conclusion that Marquise satisfied all of the specific conditions set forth in Section

911.04.A.1 of the Pittsburgh Code. R.R. at 156a, 241a–243a. It is less clear, however, whether the provisions of Section 922.06.-E.1 constitute general or specific requirements and which party has the burden of persuasion for them. Accordingly, we examine the criteria set forth in Section 922.06.E.1 with the aforementioned in mind.

Subsections (a) and (d) of Section 922.06.E.1 reference visual impacts, hours of operation, service, loading and other onsite operations, which are expressly addressed by the specific requirements of Section 911.04.A.1 of the Pittsburgh Code. There is no question that Marquise had the burden of proof and persuasion as to its specific operational impact. The last part of subsection (d) of Section 922.06.E.1 indicates that the operational requirement must be met "in consideration of adjacent and surrounding land uses which may have differing sensitivities to such operational impacts," which includes the Onala Club. R.R. at 7a. The City's only evidence as to the impact of an adult cabaret on the Onala Club consisted of the testimony of, and letters from, the following people:

Ellen Halpin Bonnett—on the basis of the Onala Club located next door. R.R. at 316a.

Susan Rua, Onala Club counselor—on the basis that the proposed use is detrimental to the people being treated at the Onala Club. R.R. at 316a.

Joe Panzino, Executive Director of the Onala Club—on the basis that people who are early in recovery from drug or alcohol addiction are told to stay away

from businesses like the one proposed; the Onala Club holds family events during the holidays. R.R. at 317a.

Dr. Merrell, Director of Onala Club clinic—opposed.[6]

Randy Jackson—on the basis that he attends Onala Club meetings, which have saved his life; the proposed use is in contradiction to the recovery environment offered by the Onala Club; it will bring an undesirable element, and it encroaches on other properties. R.R. at 318a.

Raymond Nene, Onala Club program director—on the basis that the Onala Club is waging a war against addiction. R.R. at 318a.

Bessie Miller—on the basis that the Onala Club saved her father's life; the proposed use would tempt people going to the Onala Club for help; queried where the dancers will come from. R.R. at 318a.

Planning Commissioner Dick stated that the Onala Club and the proposed use are not compatible, and it would be difficult for the Onala Club to relocate. R.R. at 318a. Planning Commissioner Burkley stated, and Commissioner Reidbord agreed, that there would be detrimental impacts on property values and development in the area of the proposed use. R.R. at 319a. Commissioner Czuczman stated that the proposed use is not needed. R.R. at 319a. Commissioner Watson stated that most people do not know that the Onala Club is there. R.R. at 319a.[7]

---

**6.** As was the case with Norene Beatty, Ellen Bonnett, Susan Rua, Shirley Johnson, and Joe Panzino, the Planning Commission's November 18, 2008 report indicates that a written letter or report was submitted by this individual, yet no such writings are provided with the reproduced record. The specifics of Dr.

Merrell's letter are, therefore, unknown to this Court.

**7.** The following people opposed the application on grounds other than its proposed location near the Onala Club:

Norene Beatty, West End Citizens Council—on the basis of the impression the pro-

■ The law is clear that objectors to a special exception and, therefore, conditional use applications "cannot meet their burden by merely speculating as to possible harm...." *Rural Area Concerned Citizens, Inc. v. Fayette County Zoning Hearing Bd.*, 166 Pa.Cmwlth. 520, 646 A.2d 717, 722 (1994). The evidence in this case as to the affect of the proposed adult cabaret on the Onala Club was completely speculative. There was no evidence presented supporting the conclusion that people with addictions who seek assistance and refuge at the Onala Club will be in any way affected by a use that, as of this time, neither promotes alcohol nor drug consumption. The City's evidence before the trial court did not rebut the presumption in Marquise's favor by demonstrating to a high degree of probability that an adult cabaret will adversely affect the public welfare in a way not normally expected from an adult cabaret. The City, therefore, did not meet its burden.

It is clear that since the focus of subsections (b) and (e) of Section 922.06.E.1 are the safety, health and convenience of residents in the area and, therefore, the burden of persuasion is always upon the City since Section 922.06.E.1 does not otherwise place it on Marquise. *Bray.* Subsection (e) relates to the potential health and safety impacts of noise, emissions, or vibrations. The City offered no evidence of any potential health and safety impacts of noise, emissions, or vibrations from the proposed adult cabaret. It, therefore, did not meet its burden.

■ While not specifically at issue in this case, Subsection (f) of Section 922.06.-

posed adult cabaret will have on the visitors. R.R. at 316a.

Sam Palombini, past President of the Sheridan Community Council. R.R. at 316a.

Georgia Blotzer—on the basis of studies that show that crime increases and property values can decrease in areas of adult cabarets. R.R. at 316a.

Marciana Rossi, Sheridan Weed and Seed Project—on the basis that Marquise's application appears to change (claims to have petition with over 1,000 signatures). R.R. at 223a, 316a.

Carl Suter, Crafton Heights/Westwood/Ridgemont Community Council—on the basis that future West End Bridge bike trail will terminate at the proposed adult cabaret, which is not a good atmosphere for bikers and children. R.R. at 317a.

Shirley Johnson—on the basis that a report of the Morehead Community College stated that most of the money from clubs with exotic dancers is from the sale of alcohol and drink quotas dancers have, and portions of lap dances or massages performed; also, drug use is not taken seriously. R.R. at 317a.

Kelly Carter—on the basis that a girl in a strip club told her that neighborhoods must worry about what goes on inside such clubs, and that many strippers use drugs to be able to work. R.R. at 317a.

Chris Mays, Pastor of New Life Fellowship church—on the basis of what goes on outside the premises; such businesses attract unwanted elements to the community, such as prostitution and drug-related crime; no neighborhood has improved with the opening of such establishments. R.R. at 239a, 317a.

Dorn Checkley, Director, Pittsburgh Coalition Against Pornography—on the basis that several adult businesses are trying to cash in on the location of a nearby casino. R.R. at 317a.

Jack Urgitis—on the basis that clubs of the type proposed are known to affect the value of property, such as his business property and his home nearby; they also exploit women and attract sexual, criminal predators. R.R. at 233a–235a, 317a.

Janice Fields—on the basis that it shouldn't matter that a neighboring building (the Buncher Building) blocks the view of the proposed business from the river. R.R. at 318a.

Richard Werner, Vice President of the Buncher Company—on the basis that an adult entertainment facility is not permitted by the Code as of right; it is not compatible with surrounding uses and it would lower property valued and discourage future development in the area. R.R. at 238a.

E.1 refers to the impact a proposed use may have on future and potential development of neighboring parcels. Since, as a matter of law, a conditional use provision in a zoning ordinance reflects a municipality's intention that the use is consistent with the zoning plan, the City cannot refuse Marquise's application on the basis of subsection (f). *See Aldridge.*

With respect to subsection (g) of Section 922.06.E.1, relating to property values, we note that this Court has examined claims of decreased property values like those mentioned in subsection (g), and has held that testimony by objectors as to reduced property values, without more, is insufficient. Specifically, this Court has held that:

> mere speculation of a reaction which fell short of the 'high degree of probability' of a substantial affect on the community required, especially where the measures utilized by the [applicant would] ensure the facility is compatible with the ... nature of the community; and second, if a decrease in property values does occur, it would be no different than that usually associated with the construction of [a use conditionally permitted by the ordinance].

*Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.,* 739 A.2d 644, 651 (Pa.Cmwlth.1999).

■ Since Marquise met its burden of proving that its proposed use is of the type permitted by conditional use, and that it complied with the specific requirements of the ordinance for such use, a presumption arose that its proposed use would be consistent with the general welfare of the community. *Aldridge.* Accordingly, the burden shifted to the City to rebut the presumption by demonstrating to a high degree of probability that an adult cabaret will adversely affect the public welfare in a way not normally expected from an adult

cabaret. *Id.* The City failed to provide such evidence. Since the City failed to rebut the presumption that the proposed conditional use is consistent with the general health, safety and welfare of the community, Marquise must prevail.

### III. Detrimental Effect on Traffic

The City also argues on appeal that objectors presented substantial evidence of a high degree of probability that the proposed cabaret would have a detrimental effect on traffic, and Marquise did not meet its burden of rebutting that evidence. We again disagree.

Section 922.06.E.1(b) of the Pittsburgh Code requires that a conditional use not have a detrimental impact on the residents and local vehicular and pedestrian traffic in the area. Since, by its express terms, it involves health, safety and welfare concerns, the burdens of proof and persuasion are on the City. Section 922.06.E.1(c), however, requires that Council approve a conditional use application if "the development will not create detrimental transportation impacts, such that the proposed development will result in traffic volumes or circulation patterns that exceed the capacity of streets and intersections likely to be used by traffic to and from the proposed development...." This provision is more specific than subsection (b), and, thus, places the burdens of proof and persuasion on Marquise, which it met.

■ Marquise presented undisputed evidence that its parking management plan satisfies the conditions set forth in Section 914 of the Pittsburgh Code for parking. R.R. at 215a–220a, 242a, 314a, 316a. When parking exceeds Marquise's available spaces, valet parking will be offered. R.R. at 316a. The proposed facility has sufficient ingress, egress and curb cuts to allow for safe entry to and exit from the

property. R.R. at 262a. An ongoing West End Improvement Project would alleviate any traffic congestion concerns. R.R. at 261 a–262a. Marquise submitted a traffic count conducted over a 7–day period on Carson Street which demonstrated that the highest peak-hour traffic occurred on Wednesday between 4:45 and 5:45 p.m., Thursday between 4:30 and 5:30 p.m., and Saturday between 6:00 and 7:00 p.m. R.R. at 158.[8]

Testimony offered by the City as to the effect the proposed use of the subject property as an adult cabaret on area traffic was as follows:

> Dru Simenoe, West Pittsburgh Partnership, West End Village Residents Association and West End Village Business Association—there is only one means of egress shown; there is not enough room for vehicles, and there will be detrimental traffic impact. R.R. at 316a.

> Marciana Rossi, Sheridan Weed and Seed Project—the use will be located in the gateway to the City, which is a dangerous merge area. R.R. at 316a.

> Theresa Smith, president of Crafton Heights/Westwood/Ridgemont Community Council—between 2003 and 2007, West Carson was the site of 155 reported accidents (5 deaths); 24 Port Authority buses travel in front of the proposed location during the day, plans to use parking near the incline have not been made. R.R. at 317a.

> Randy Jackson—he attends Onala Club meetings; the proposed use has inadequate parking, it will cause traffic and safety problems. R.R. at 318a.

> Peter Lackey, Onala Club volunteer— West Carson Street is a traffic nightmare. R.R. at 318a.

> Evelyn Neiser, Vice Chairwoman of 20th Ward—she is concerned with the traffic situation on West Carson Street. R.R. at 318a.

> Richard Werner, Vice President of the Buncher Company—it would increase existing dangerous traffic conditions in the area. R.R. at 238a.

This Court has stated that "an increase in traffic is generally not grounds for denial of a [conditional use] unless there is a high probability that the proposed use will generate traffic not normally generated by that type of use and that the abnormal traffic threatens safety." *Accelerated Enters., Inc. v. The Hazle Twp. Zoning Hearing Bd.*, 773 A.2d 824, 827 (Pa.Cmwlth. 2001).

The Pennsylvania Supreme Court has stated:

> The anticipated increase in traffic must be of such character that it bears a *substantial* relation to the health and safety of the community. A prevision of the effect of such an increase in traffic must indicate that not only is there a likelihood but a high degree of probability that it will affect the safety and health of the community, and such prevision must be based on evidence sufficient for the purpose. Until such strong degree of probability is evidenced by legally sufficient testimony no court should act in such a way as to deprive a landowner of the otherwise legitimate use of his land.

---

**8.** We note that the traffic count report indicates that the count was taken on East Carson Street, just west of Tenth Street. The proposed adult cabaret is located at 1635 West Carson Street. R.R. at 56a, 158a. It appears that the count was done for a matter involving Station Square. R.R. at 25a. Since, however, Marquise did not have a burden of persuasion as to this criteria, the proximity of the count to the location of the proposed adult cabaret is not fatal to Marquise's application.

*Appeal of O'Hara*, 389 Pa. 35, 54, 131 A.2d 587, 596 (1957). When what is presented by objectors is a mere "speculation of possible harms," they have failed to meet their burden. *Accelerated Enters., Inc.*, 773 A.2d at 826. Since the City's evidence consisted of nothing more than speculation that Marquise's proposed use will affect traffic, it has failed to meet its burden as to Section 922.06.E.1(c) of the Pittsburgh Code.

Given that Marquise's hours of operation will be between 9:00 p.m. and 4:00 a.m., it does not appear that there would be an increase in traffic volumes due to the cabaret's operation during an already congested time. Moreover, the location is in a UI zoning district, in which are allowed "mid-sized to large industries" and "multi-use buildings" for "assembly, inventory, sales, and business functions. . . ." Original Record, Pittsburgh Code, Section 904.07.A. Such other permitted operations are not likely to be hampered by any increased traffic that may result from the operation of the adult cabaret during its proposed hours of operation.

### IV. Conclusion

Based upon the foregoing, we hold that there was sufficient evidence to support the trial court's decision, and that it did not commit an error of law. As stated above, Section 911.02 and Chapter 926 of the Pittsburgh Code expressly permit "adult entertainment" and specifically adult cabarets in the City's Urban Industrial zoning districts. The trial court's decision granting Marquise's conditional use application is, therefore, affirmed.

Judge McCULLOUGH did not participate in the decision in this case.

### ORDER

AND NOW, this 30th day of December, 2010, the November 23, 2009 order of the Court of Common Pleas of Allegheny County is affirmed.