# Recovery Coaching Services, Inc. v. Board of Commissioners of Township of Muhlenberg

322

C.P. of Berks County, No. 13-17580

*Allen R. Shollenberger*, for appellant.
*Michael A. Setley*, for appellee.

SPRECHER, *J.*, April 1, 2014—Appellee appeals the order dated January 26, 2014, which granted appellant's appeal and reversed the decision of appellee. This opinion is filed pursuant to Pa. R.A.P. 1925.

## FACTS

Samuel A. Albert, Jr. (hereinafter, applicant) is the applicant and partial owner of appellant, Recovery Coaching Services, Inc., a privately funded corporation. Applicant is a certified recovery specialist who has taken

over thirty independent courses for addiction through the Council on Chemical Abuse. To maintain his certification, he must take thirty hours of courses within a period of two years. Appellant owns the property located at 2126 N. 18th Street, Township of Muhlenberg, Berks County, Pennsylvania (hereinafter, property). Property was a single family dwelling which appellant acquired by deed dated March 8, 2013. Applicant wants to convert property into a group home to provide a transitional housing facility for people recovering from the disease of addiction. Although people with any type of addition will be admitted to the facility, it will house people primarily in early and middle stages of drug or alcohol addictions. The purpose of the home is to provide a safe and structured environment for people who have been in treatment or aftercare and are preparing to return to their families. Group homes are a permitted conditional use under the zoning ordinance.

Applicant testified that there are no licensing requirements under state or local regulations for the operation of this type of a group home. Applicant lives across the street from property and will continue to live there during the operation of the home, so that he will be able to monitor it. There will also be a live-in house manager with an upstairs apartment. The home will be limited to five male residents who will be referred to appellant after their completion of treatment.

All potential residents will be subject to a criminal background check, and no one who has been convicted of violent or sexual crimes will be allowed in the home. People who have been convicted of the crime of driving under the influence will be permitted to participate, but not those needing detoxification. The residents will be people who have enjoyed months of continued, sustained

sobriety. The residents must sign a residential handbook which operates as a behavioral agreement.

All residents will be subject to breathalyzers and random urine screens. Residents will be tested at least weekly, probably twice per week. They will be discharged if any tests are positive. Applicant testified that there is a recovery rate of eighty percent for the addictions.

The average stay will be for ninety days, and if more time is needed, then the stay will be extended on a monthly basis. Residents must pay their fees in full before their admissions; the full payment of $7,500.00 for ninety days provides an incentive to perform well because there are no refunds.

All visitors must be family members and approved by the house manager, the case manager, and applicant. No overnight visits will be allowed on property.

The nearest school lies in the Reading School District and was closed by that district. There are five to six off-street parking spaces which is compliant with the zoning ordinance. Applicant is not making any exterior or interior physical changes or alterations to property. There will also be no change to the lighting and no increase in noise levels on property. If appellant would abandon the property, it would be restored to single-family dwelling unit status.

Applicant testified that there would not be any increased traffic that would result from the establishment of a group home. Appellant will provide transportation for the residents, and the residents will have to earn the right to have a car at the property.

Property would continue to use the existing municipal water and sewer connections. There will not be any increase

for a fire or other catastrophe on property. Applicant would agree to any conditions, including additional supervision, which the board would order as necessary or appropriate for the grant of the conditional use.

The township's engineer, Jamal Abodalo, testified that the spacing requirement for group homes in the ordinance may be unenforceable. It violates both the Fair Housing Amendments Act of 1988 and the Equal Protection Clause of the United States Constitution because it discriminates against people with disabilities (Transcript 110). Moreover, he testified that "a group home is a way society can actually recover some people and bring them back into the society itself" (Transcript 109).

The president of the board of commissioners, Michael S. Malinowski, noted at the beginning of the hearing that "a lot of passion" was present in the audience (Transcript 4). Approximately twenty people spoke against the establishment of the group home. They raised concerns about the location of a bar and a bus stop for elementary schoolchildren which were located within 1,000 feet of property. They expressed concerns about property values declining due to the establishment of a group home in the neighborhood. Some complained that there is no incentive to the township and community to allow a group home.

Many complained about the potential for an increase in crime. One resident worried that appellant may house thieves who would break into her home and rob her. She was also worried that the addicts would attack older and feeble persons. A retired reading police officer testified that addicts who are high are very strong and that as a police officer he had to "beat them so hard my arm hurt" (Transcript 87). There was also uncontroverted testimony that the neighborhood already had drug users who were

not receiving any treatment.

One citizen worried about accountability and that the group home would become a warehouse for addicts. Another resident was opposed to the group home due to her "young impressionable son" (Transcript 101). Another person did not want to see Muhlenberg Township become the bunt of joke as Wernersville did when a resident walked away from a treatment facility.

Following the hearing, appellee denied the application for a conditional use due to violations of the zoning ordinance and a finding that the party protestors presented credible evidence that if an addict relapsed, his behavior could endanger the public. After argument and a review of the record, this court entered the order which is the subject of the instant appeal.

## ISSUES

Appellee's concise statement of errors complained of on appeal raises the following issues.

1. Whether this court erred in entering judgment in favor of appellant and against appellee.

2. Whether this court erred in determining that appellant met its burden of proving to appellee that it had satisfied the specific requirements of Muhlenberg Township Zoning Ordinance § 154-57(D)(2).

3. Whether this court erred in determining that appellant met its burden of proving that it had satisfied the specific requirements of Muhlenberg Township Zoning Ordinance § 154-57(D)(8).

4. Whether this court erred in determining that appellee abused its discretion or made a clear error of law in finding

that appellant did not produce sufficient evidence to meet its burden of establishing that it had complied with the specific zoning standards listed in Muhlenberg Township Zoning Ordinances §§ 154(D)(2) and (D)(8).

5. Whether this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of Muhlenberg Township Zoning Ordinance § 154-167(E)(9).

6. Whether this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of Muhlenberg Township Zoning Ordinance § 154-167(E)(10).

7. Whether this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of Muhlenberg Township Zoning Ordinance § 154-167(E)(12).

8. Whether this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of Muhlenberg Township Zoning Ordinance § 154-167(E)(14).

9. Whether this court erred in determining that appellee abused its discretion or made a clear error of law in deciding that appellant did not produce sufficient evidence to meet its burden of establishing that it had complied with the zoning standards listed in Muhlenberg Township Zoning Ordinances §§ 154-167 (E)(4), (E)(9), (E)(10), (E)(12), and (E)(14).

10. Whether this court erred in determining that appellant met its burden of establishing that its proposed use for the proposed location would not be contrary to public health, safety, morals and/or public welfare.

11. Whether this court erred in determining that the appellee abused its discretion or made a clear error of law in finding that appellant's proposed use for the proposed location would be adverse to public health, safety, morals and/or public welfare.

## DISCUSSION

The existence of a conditional use provision in a zoning ordinance indicates the legislative acceptance that the use is consistent with the zoning plan, and a use application should only be denied where the adverse impact on the public interest exceeds that which might be expected in normal circumstances. *Marquise Investment, Inc. v. City of Pittsburgh*, 11 A.3d 607 (Pa. Cmwlth. 2010). In the case *sub judice*, appellant met its burden that its purposed use of a group home satisfied the objective requirements of the zoning ordinance for the grant of a conditional use and that the adverse impact on the public interest did not exceed what is expected in normal circumstances.

Appellee first complains that this court erred in determining that appellant met its burden of proving that it had satisfied the specific requirements of § 154-57(D)(2) which requires a submission of architectural plans. This contention is without merit. Applicant testified that he was not making any exterior or interior construction or alteration to property; however, he would be amenable to preparing such plans, if requested by appellee. A conditional use proceeding concerns only a proposed use of land, not the particular design details of the proposed development. *Joseph v. Whitehall Township Board of Supervisors*, 16 A.3d 1209 (Pa. Cmwlth. 2011). Thus, the lack of architectural plans is not a valid reason for the denial of the application and was irrelevant to the issue of a conditional use.

Appellee next complains that this court erred in determining that appellant met its burden of proving that it had satisfied the specific requirements of § 154-57(D)(8) of providing documentation that it had met all the building, fire, plumbing, heating, and electrical standards established by the Township Code and the Commonwealth of Pennsylvania. This complaint is without merit.

The township conducted its own inspection of property prior to applicant's purchase in March 2013, less than four months before the hearing. Applicant also presented the insurance inspector's report and the recommendations which were met. The Commonwealth has no standards for a group home. Property was able to accommodate six family members, for example, two adults and four children, and satisfy all the specific requirements of the ordinance prior to applicant's purchase; therefore, there are no reasons that it cannot satisfy all the requirements when there are six male residents living there.

Appellee complains that this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of § 154-167(E)(9) which states that the applicant must provide supporting documentation that the local fire departments have the abilities to provide adequate fire protection and emergency management services for the use. This complaint is a frippery and should be dismissed. The same fire companies that serviced property before applicant purchased it will continue to service it. Applicant is not converting property into a chemical factory. Property is remaining a residence. The fire companies have met the needs of the prior owners of property and the other community residents, so there are no reasons that they cannot continue to meet the present needs of the property.

Appellee asserts that this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of § 154-167(E)(10) of having adequate water storage available for fire-fighting purposes. For the same reasons as stated in the preceding paragraph, this argument fails and must be dismissed.

Appellee contends that this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of § 154-167(E)(12) that the existing sewage disposal facilities have sufficient capacity for the property use. This contention is frivolous and should be dismissed. The existing sewage disposal facilities had sufficient capacity before property was sold; hence, they must have sufficient capacity now because property is remaining a residence.

Appellee asserts that this court erred in determining that appellant met its burden of proving that it had satisfied the requirements of § 143-167(E)(14) by providing documentation that there will be no increase in surface water runoff and erosion within property or at the boundaries as a result of site improvements. This complaint is ridiculous. Applicant testified that it is not making any alterations to property, so there are no improvements. Appellant cannot be forced to prove a nonexistent fact.

Appellee's final complaint is that this court erred in determining that appellee abused its discretion or made a clear error of law in deciding that appellant did not produce sufficient evidence that its proposed use would not be adverse to the public health, safety, morals, and/or public welfare. This contention is without merit.

In the case *sub judice*, the proposed use of a group home is a type permitted by conditional use. A presumption

therefore arises that the proposed use is consistent with the general welfare. The burden of proof shifts to the objectors to rebut the presumption by proving to a high degree of probability that the proposed use will adversely affect the public welfare in a way not normally expected from the type of use.

Appellee in the case at bar was presented with the task of granting a conditional use application for an unpopular subject — addiction. A member of appellee even noted on the record that passions were high. Appellee failed its duty to be unbiased and grant the conditional use application due to the negativity surrounding the use. Appellee was swayed by the objectors' vehemence against the conditional use; however, the objectors presented no evidence or facts, just speculation which in no way proved to a high degree of probability that the proposed use will adversely affect the public welfare.

What is uncontroverted is that the group home will have a maximum number of five residents with a live-in manager and oversight by applicant. The residents will pay well for the privilege of renting a room for $2,500.00 per month. The residents will lose all their money for that privilege if they violate the conditions of the group home. No person will be admitted with a criminal background of violent or sexual crimes.

The objectors are also aware of drug use in their neighborhood by persons who are not seeking any treatment. It is more likely that those users, rather than group home residents, will rob them. The group home residents will have completed their programs and are transitioning back into being productive citizens. The users out on the streets have not treated for their addictions. Assuming *arguendo* that a resident does relapse, it does

not mean that he will become violent.

The objectors' anecdotes about addicts whom they knew or encountered are not evidence. They are simply reflections of fear and a dislike for the proposed group home. It is irrelevant that a former policeman used to beat up subjects who were high; there is no indication that those people had even received any treatment. Too, relatives who are addicts and have not received any treatment are also irrelevant to the issue. If the residents are willing to walk around the neighborhood with the current drug users residing there, then they should be able to take walks with people residing in the neighborhood who have received treatment and are currently sober. No professional or expert testimony was presented besides that of applicant.

The concerns about the loss of value of the real estate were not supported by evidence. Speculation is not proof.

In accordance with the foregoing opinion, this court submits that its order should be affirmed and the appeal denied.