ALLEGHENY VALLEY RAILROAD
COMPANY, Appellant

v.

CITY OF PITTSBURGH and
The Buncher Company.

Commonwealth Court of Pennsylvania.

Argued April 23, 2014.
Decided July 7, 2014.

Jonathan M. Kamin, Pittsburgh, for appellant.

James G. McLean, Pittsburgh, for appellee The Buncher Company.

BEFORE: DAN PELLEGRINI, President Judge, and BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ANNE E. COVEY, Judge.

OPINION BY Judge LEADBETTER.

Allegheny Valley Railroad Company (Railroad) appeals from the order of the Court of Common Pleas of Allegheny County (common pleas), denying its land use appeal. In that appeal, Railroad sought to invalidate a recently enacted ordinance amending the City of Pittsburgh's (City) Zoning Code, which created a new Specially Planned District (SP District), designated SP 8/Riverfront Landing, on a parcel where Railroad asserts it has an easement. Railroad asserted that its easement rendered the parcel ineligible for the new zoning classification. Noting that rezoning constitutes a legislative act subject to limited judicial review and that Railroad had failed to raise either a procedural due process or a substantive validity challenge to the ordinance, common pleas concluded that it lacked authority to review the mat-

ter and denied the appeal. In doing so, common pleas also opined in *dicta* that there was no merit to the contentions underlying Railroad's challenge. After review, we affirm for different reasons.[1]

In this matter, The Buncher Company (Buncher), submitted a Zone Change Petition to the City, seeking to amend the zoning regulations and map to add a new SP District.[2] The proposed rezoning sought to change the zoning on approximately 37 acres of riverfront property from, *inter alia,* Golden Triangle and Urban Industrial, to SP 8/Riverfront Landing, thereby permitting Buncher to move forward with plans to redevelop the property for residential and commercial uses in accordance with a proposed land use plan.[3] Following notice and public hearings, the City enacted an ordinance (Ordinance), amending Title Nine of its Zoning Code (particularly Chapter 909, pertaining to SP Districts) by adding the new SP District, SP 8/Riverfront Landing.[4] Relevant to the instant dispute, Zoning Code Section 909.01.D.1, which applies to all SP Districts, provides:

Criteria for Establishment of an SP District

---

1. An appellate court may affirm the trial court for grounds different than those relied upon by the trial court where other grounds for affirmance exist. *Evans v. Thomas Jefferson Univ.,* 81 A.3d 1062, 1072 (Pa.Cmwlth.2013).

2. At that time, there were seven SP Districts identified in the City's Zoning Code; Buncher's petition sought to add an eighth. The Zoning Code generally describes the purpose of the SP District as follows:

 The SP, Specially Planned District regulations are intended to provide a framework for alternative forms of development for very large sites. Applicable regulations and procedures are intended to create efficient, functional and attractive urban areas that incorporate high levels of amenities and that meet public objectives for protection and preservation of the natural environment. The regulations are intended to per-

mit a substantial amount of flexibility in site planning because of the large size of the site and because of its relative isolation from any neighborhood context. SP District provisions are intended to apply only to developments that have citywide impacts.

 Zoning Code Section 909.01.A (pertaining to SP, Specially Planned District; Purpose).

3. The redevelopment appears to be a joint venture with the City's Redevelopment Authority.

4. In addition to establishing boundaries for the SP 8/Riverfront Landing District, the amendment created very specific use, area and bulk standards for the new district. The Ordinance also amended other provisions of Title Nine.

(a) Land Area

An SP District shall comprise a contiguous area of land of not less than [15] acres, except as separated by public streets, public ways, rivers or railroad tracks; shall comprise a reasonable unit for planned development; shall not be less than [15] acres, the calculation of which shall exclude land with slopes greater than [25%] and areas of water with a designated harbor line.

(b) Unified Control

*One hundred (100) percent of the land in an SP District shall be controlled by the applicant for the SP District at the time of application through ownership or sales options.* A final land development plan shall not be approved and rezoning of an SP District shall not become effective until proof of ownership of the land or proof of control of the land through sales agreement has been submitted by the applicant.

Zoning Code Section 909.01.D.1 [Emphasis added].

According to Railroad, it advised the City by letter prior to enactment of the Ordinance that it owns a rail easement across the Buncher property in the proposed SP 8 District, which prevented Buncher from satisfying the Section 909.01.D.1 requirement that the applicant control 100% of the land.[5] Following enactment of the Ordinance, Railroad appealed to common pleas, again asserting that in light of its easement across the Buncher property, Buncher failed to establish at the time of application that it had 100% control of the land in the SP 8 District. According to Railroad, Buncher's failure to meet the unified control requirement constituted a procedural defect in the Ordinance enactment, such that Council's decision enacting the Ordinance was "not in accordance with law, [in violation of] the statutory provisions governing practice and procedure before local agencies, [and] contain[ed] necessary findings that were not supported by substantial evidence and/or contrary to the laws of this Commonwealth and [the Zoning Code]." Land Use Appeal, ¶ 27 (Reproduced Record at 10a). Accordingly, Railroad requested common pleas to declare the Ordinance void because City Council approved it in violation of the Zoning Code.

Common pleas denied the appeal. In doing so, it noted that when a governing body such as City Council acts on an application for rezoning, it is acting in its legislative capacity. Concluding that Railroad had not raised a procedural due process challenge nor challenged the substantive validity of the Ordinance, the court concluded that it lacked authority to review Council's action. Notwithstanding that conclusion, however, common pleas opined in *dicta* that when subsections (a) (land area) and (b) (unified control) of Section 909.01.D.1 of the Zoning Code are construed together, an easement over an applicant's land did not preclude the applicant from satisfying the unified control requirement of subsection (b). Finally,

---

**5.** According to Railroad's land use appeal and its appellate brief before this court, Railroad acquired various property interests from the Consolidated Rail Corporation (Conrail), including an easement to operate and maintain the Valley Industrial Track, which allegedly crosses Buncher's property in the SP 8 District. There does not appear to be any dispute that when the easement for the Valley Industrial Track was owned by Conrail, Conrail removed the physical tracks and took steps to formally abandon the line. Nor does there appear to be any dispute that at all times relevant, Railroad has not used the Valley Industrial Track. There is a dispute, however, regarding whether Conrail had completely abandoned the easement, thereby preventing Railroad from restoring its use for rail purposes in the future.

without indicating the evidence relied upon, common pleas also held that Railroad's easement was not valid. This appeal followed.[6]

On appeal, Railroad first contends that common pleas erred in concluding that it lacked authority to address the procedural errors that occurred in enacting the Ordinance. According to Railroad:

> Buncher ... misconstrue[s] the challenge asserted in [Railroad's] appeal in an attempt to recast [Railroad's] challenge as a challenge to a legislative act. Such position, simply, disregards the issues presented before the Court. Specifically, [Railroad] merely seeks to have the court review the facts presented to Council as part of the rezoning request, which irrefutably establish that Buncher does not maintain 100% control over the Rezoned Property, and the requirements of the Code. [Railroad] does not seek a review of Council's motives and/or authority to enact amendments to the Code or the zoning map. . .. Rather, [Railroad] seeks to require Council to abide by the regulatory prerequisites set forth in the Code. Such challenge is directly akin to a challenge to Council's approval of a conditional use application.

Brief of Appellant at 13–14. In support, Railroad notes that the Zoning Code provisions applicable to all SP Districts provide, in pertinent part:

> The approval of an improvement subdivision site plan and the enactment of an SP District as an amendment to the Zoning Code shall require compliance with all applicable regulations of this Code and with the standards and regulations contained in the Subdivision Regulations and Standards pursuant to the Act of May 13, 1927, (P.L. 1101) as amended, adopted by the Planning Commission.

Zoning Code Section 909.01C (entitled, "Applicable Standards"). Thus, Railroad suggests that compliance with Section 909.01.D.1 (pertaining to land area/unified control) was procedurally necessary in order for the zoning amendment creating the SP 8 District to be valid.

■ As common pleas noted, ordinarily when a governing body acts upon a rezoning application, it acts in its legislative capacity and, therefore, the governing body's decision to grant or deny the request for rezoning is generally not subject to judicial review. *See generally E. Lampeter Twp. v. County of Lancaster*, 744 A.2d 359 (Pa.Cmwlth.2000). Judicial review is available, however, to review alleged procedural irregularities in the enactment process (i.e., defects in notice, advertisement, posting, hearing process, etc.), *see* 42 Pa.C.S. § 5571.1 (relating to appeals from ordinances, resolutions, maps, etc.); *Messina v. E. Penn Twp.*, 619 Pa. 326, 62 A.3d 363 (2012), or challenges to the substantive validity of an ordinance (i.e., whether the ordinance is substantially related to a legitimate interest). *See generally Penn Street, L.P. v. E. Lampeter Twp. Zoning Hearing Bd.*, 84 A.3d 1114 (Pa.Cmwlth.2014).[7]

■ Initially, we observe that Railroad's characterization of its challenge as procedural is somewhat misleading, and com-

---

6. The City has joined in the appellate brief filed by Buncher rather than filing a separate brief.

7. We note that the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, does not apply to cities of the first and second class, which are Philadelphia and Pittsburgh, respectively. Section 107(a) of the MPC, 53 P.S. § 10107(a); *see also Marquise Investment, Inc. v. City of Pittsburgh*, 11 A.3d 607 (Pa. Cmwlth.2010).

mon pleas's broad brush dismissal of the appeal as an unreviewable challenge to an act of legislative discretion misses the mark. Clearly, Railroad has not raised a traditional procedural due process challenge to the process involved in enacting the zoning amendment, and it has not challenged the substantive validity of the Ordinance, nor otherwise questioned Council's discretion in concluding that the re-zoned area was generally suitable or compatible for development under SP District provisions. Rather, Railroad is challenging the ability of the particular applicant seeking the zoning amendment to satisfy a Zoning Code provision that is not only applicable to all SP Districts, but that must be satisfied before the rezoning takes effect.

Both the Zoning Code provisions and the appellate argument in this matter demonstrate the somewhat unusual process established for the creation of an SP District. The creation of an SP District is specifically tailored to a particular land development plan and the rezoning process occurs simultaneously with land develop-

ment approval. The Zoning Code specifically states that: SP zoning districts "may be established only in accordance with the Zoning Map Amendment procedures of [Section] 922.05 [pertaining to Zoning Map and Text Amendments] and the review and approval procedures of this section [pertaining to, *inter alia,* applications and hearings on preliminary development plans], *which shall be carried out concurrently with the Zoning Map Amendment process.*" Zoning Code Section 922.11.A ("Method of Adoption") (emphasis added). The applicant for rezoning submits its preliminary land development plan[8] along with its application for rezoning and the City's Planning Commission holds a public hearing on the application for preliminary development plan approval concurrently with the hearing on the application for rezoning. *See* Zoning Code Section 922.11.B.2; *see also* the City's website at *http://pittsburghpa.gov/dcp/zoning/spds.*[9] The Planning Commission's preliminary review criteria specifically includes consideration of whether the proposed develop-

---

8. Chapter 909 defines a "preliminary land development plan" as follows:

[A] document in support of a proposal for approval of a development and for the re-zoning of a site into a [SP] District classification with a unique name attached thereto, submitted to the Planning Commission, in order to demonstrate that a superior development plan shall be followed within the overall bounds of the zoning text. The preliminary land development plan shall contain all that information required by the Zoning Administrator to support the application.

Section 909.01.B.2.

9. The City's website, specifically addressing the question "How are Specially Planned Districts Created?" advises the public as follows:

[Step 4 of the process]. , Data from the analysis phase and input from public participation is culminated into a single master plan or [Preliminary Land Development Plan] PLDP. The [PLDP] and accompanying

Zoning text is submitted to City Planning where it is reviewed and evaluated through the Design Review Process.

[Step 5]. Once the PLDP has gone through Design Review and subsequent revisions, applicants may submit the PLDP and zoning text for Planning Commission approval. The Planning Commission is charged with reviewing and approving the site plan, zone change, as well as the site subdivision plan.

[Step 6]. Once Planning Commission has approved the SP District, City Council adopts the new zoning text and zoning map amendments.

*http://pittsburghpa.gov/dcp/zoning/spds.* The website further directs: "Once a PLDP and subsequent zoning changes have been approved, building plans are reviewed in the form of Final Land Development Plans.... An [sic] FLDP is approved based on [its] compliance with the previously approved PLDP unless an updated PLDP is submitted with the FLDP application." *Id.*

ment complies with the City's plans and policy documents. Zoning Code, Section 922.11.B.3. The Planning Commission then provides its recommendation to City Council. *Id.,* Section 922.11.B.2. City Council then holds its public hearing on the application to rezone. *Id.,* Section 922.11.B.5. *See also* Section 922.05.E (pertaining to City Council hearing on zoning text or map amendment). After Council approves the zoning map amendment, the applicant submits a final land development plan for approval. *Id.,* Section 922.11.C. On review of the final plan, the Planning Commission must determine whether the plan addresses the project's compatibility and conformance with the Zoning Code and plans and policies approved by the Commission. *Id.,* Section 922.11.C.2. As noted above, a "final land development plan shall not be approved and rezoning of an SP District shall not become effective until proof of ownership of the land or proof of control of the land through sales agreement has been submitted by the applicant." *Id.,* Section 909.01.D.1. After the final land development plan is approved by the Planning Commission and an improvement subdivision site plan is recorded, the applicant submits construction drawings for project development and applies for SP rezoning and a certificate of occupancy. Sections 922.11.B.1 and 922.11.C.3. Pursuant to Zoning Code Section 922.11.B.5, the zoning map amendment does not become effective and the change in zoning is not entered upon the zoning district map until the Planning Commission has approved the final land development plan and the im-

provement subdivision site plan has been recorded.

It is clear that the creation and approval of a new SP District is closely intertwined with the land development process. Notably, preliminary land development approval occurs concurrently with Council's review of the rezoning application and the map change cannot occur until the applicant has received final land development plan approval.[10] The Ordinance enacted by Council creating the new SP District demonstrates this dependent relationship as well. Section 2.B. of the Ordinance provides that the zoning map amendment "shall take effect only upon recording of a Planning Commission approved Improvement Site Plan for the subject property ... within two years of the date of enactment of this ordinance." Reproduced Record (R.R.) at 101a. *See also* Section 3.9 (stating: "The proposed public parking spaces *depicted in the Conceptual Master Plan of the Preliminary Land Development Plan* shall be no less than 330...."). *Id.* at 102a (emphasis added).

Thus, City Council was not simply acting in its legislative capacity when it enacted the zoning amendment; it also acted administratively, giving preliminary plan approval to the applicant's project, which entailed consideration of whether Buncher's plans, the basis for the rezoning request and the terms of the ultimate amendment, satisfied certain Zoning Code provisions. While Council's discretion to amend the zoning map to create the SP 8 District cannot be reviewed in this action, its administrative determination that

10. Buncher avers in its appellate brief, and it does not appear to be disputed, that Buncher submitted documentation to the City demonstrating either that it owned or had under contract the land included in the proposed SP District, except to the extent that the relevant property was separated by public streets, public ways, rivers or railroad tracks. Indeed, the Zoning Administrator's Development Review Report, dated June 12, 2012, and submitted to the Planning Commission, states that all of the criteria set forth in Section 909.01.D.1 (land area and unified control) has been demonstrated. City's Return, Exhibit 10.

Buncher has satisfied Section 909.01.D.1 of the Zoning Code is subject to judicial review.[11]

■ Railroad next argues that its rail easement across Buncher's property precludes Buncher from establishing the necessary control of the land required in an SP District. In support, Railroad contends that a permanent rail easement provides it with extensive rights, including the right to enter the property, operate over it, and maintain, repair and renew the rail line. Citing *In re Marivitz*, 161 Pa. Cmwlth. 247, 636 A.2d 1241 (1994), Railroad maintains that a rail easement provides more than a mere right of way; rather, it provides greater dominion and control than that afforded by other types of easements.[12] Reading the subsections of Section 909.01.D.1 independently, rather than in *pari materia*, Railroad posits that subsection (a) (land area) establishes only the minimum land required to create an SP District, while subsection (b) (unified control) separately requires the applicant to control 100% of the land within the District; it does not include an exception from control for public streets, public ways, rivers or railroad tracks.

Buncher's construction of the zoning provision is more logical. Contending that the provisions for land area and unified control must be read together, Buncher argues:

Subsection (a) ... states that "land," for the purposes of establishing an SP district, is "a contiguous area of land not less than 15 acres, except as separated by public streets, public ways, rivers or railroad tracks." Subsection (b) requires that "one hundred percent of the land in an SP district shall be controlled by the applicant for the SP District ..." [ ] Clearly, the term "land" as used in subsection (b), refers to the term "land" as described in subsection (a). [Thus,] [i]n order to qualify for an SP District, the applicant must have 100% control over at least fifteen (15) acres of contiguous land, except to the extent that it is separated by public streets, public ways, rivers or railroad tracks. [T]he Zoning Ordinance logically recognizes the likelihood that a contiguous area of land of such size (15 or more acres) in the City of Pittsburgh would be divided by public roads, public ways, and railroad tracks or a river. As such, the Zoning Ordinance explicitly contemplates that land within a proposed SP District may be separated by railroad tracks or other public thoroughfares and that the existence of such public roads, public way or railroad tracks will not prohibit the City from creating an SP District.

Since the Zoning Ordinance specifically and explicitly allowed for the possibility that an SP District could be divided by public roads, public ways, railroad tracks or a river, it is incon-

---

11. Neither party has argued that the City has yet to determine that Buncher satisfies Section 909.01.D.

12. In *Marivitz*, the court compared an easement for highway purposes, which was at issue in that case, to a railroad right of way, observing as follows:

Although the exact nature of such estates in land is difficult to pinpoint, the interest, while not a fee, is not a mere easement or right of way. It is more. It is the right to the actual and exclusive possession of the property at all times and for all purposes, and includes the right to build on the land, fence it in, and exclude other uses. It is comparable to a fee in the surface and so much beneath as may be necessary for support. This estate, taken from an owner under the right of eminent domain, has no further practical value to the owner in view of the rights of the state in it, unless the easement is formally abandoned.
636 A.2d at 1243.

ceivable that the presence of any of the aforementioned would then become the basis for why the owner does not have 100% control of the land contained in the SP District within the meaning of subsection (b).... To interpret the [Ordinance] as [Railroad] suggests would result in an interpretation of the [Ordinance] wherein subsection (b) negates and preempts subsection (a)....

Brief at 19–20. Buncher further notes that an easement, regardless of how expansive or invasive, "never indicates an interest in the nature of fee simple.... [It] is a non-possessory interest in land in the possession of another entitling its holder to a *limited use or enjoyment of the land in which the interest exists." Id.* at 21 [quoting *In re Condemnation Proceeding by S. Whitehall Twp. Auth.,* 940 A.2d 624, 628 (Pa.Cmwlth.2008) (emphasis in original)].

 We agree with Buncher's construction of the zoning provision. It is illogical to construe the Code to provide that on the one hand, public thoroughfares, railroad tracks and other rights-of-way running through and separating an applicant's land will not preclude the applicant from meeting the minimum acreage required for a development in an SP District, but on the other hand, such rights-of-way will prevent the applicant from satisfying the unified control requirement. Moreover, subsection (b) requires a demonstration of the requisite control by "ownership or sales options." Demonstration of the requisite control is required before final land development plan approval can occur or rezoning becomes effective. The most reason-

able interpretation here is that the City is seeking to ensure that an applicant has sufficient ownership interest to actually move forward with the development plans forming the basis of the rezoning request. Easements do not preclude a fee simple interest or the right to control the property burdened thereby: "A fee simple interest may be burdened by an easement and that easement may indeed decrease the value of the land by limiting its development, but the presence of the easement in no way diminishes or extinguishes the possessory interest of the fee holder." *In re Condemnation Proceeding by S. Whitehall Twp. Auth.,* 940 A.2d at 628.

Finally, this Zoning Code regulates development in a second class city, not a rural area, and the purpose of an SP District is to create "functional and attractive *urban* areas" on "very large sites." *See* n. 2 above. It strains credulity that there are many, if any, large parcels suitable for development as an SP District that are completely unencumbered by any easements or rights-of-way; to interpret the provision to require such undivided land would be not only unreasonable but most likely prohibitive of further rezoning under SP District guidelines.[13, 14]

Based on the foregoing, we affirm.

Judge BROBSON did not participate in the decision in this case.

### ORDER

AND NOW, this 7th day of July, 2014, the order of the Court of Common Pleas of

---

13. Indeed, Section 909.01.A (purpose of SP Districts) expressly acknowledges that an SP District zone is intended for very large sites that will have citywide impact.

14. Based upon our conclusion that Railroad's purported easement does not preclude Buncher from satisfying Section 909.01.D.1, we need not address Railroad's argument that common pleas erred in holding that it lacked a valid easement.

Allegheny County in the above-captioned matter is hereby AFFIRMED.

## CONCURRING AND DISSENTING OPINION BY Judge McCULLOUGH.

I concur with the Majority's holding that the City of Pittsburgh Council's administrative determination that · The Buncher Company (Buncher) has met the requirements of section 909.01.D.1 of the City of Pittsburgh's Zoning Code is subject to judicial review. I also concur with the Majority's holding that subsections (a) and (b) of section 909.01.D.1 must be read *in pari materia*, and, when read together, public streets, public ways, rivers, and railroad tracks, such as those found in this case, will not destroy subsection (b)'s one hundred percent control of the land requirement. However, I respectfully disagree with the Majority that we need not address whether Allegheny Valley Railroad Company (Railroad) has a valid easement and would remand the case to the trial court for further findings regarding whether Railroad has a valid easement across Buncher's property.

In one sentence, the trial court held that "[Railroad] does not have a valid easement across Buncher's property." (Trial court op. at 4.) The trial court failed to provide a reasonable basis for this conclusion, and, thus, this omission precludes our ability to undertake meaningful appellate review of this issue.

However, the trial court determined that whether Railroad has a valid easement "is irrelevant because it does not affect Buncher's control of the property[,]" (Trial court op. at 4), because, under the language of section 909.01. D.1, a rail easement does not prevent a landowner from having the requisite one hundred percent control needed for a Specially Planned District (SP District). (Trial court op. at 3–4.) The Majority agrees with the rea-soning of the trial court. (Maj. op. at 945 n. 14) ("Based upon our conclusion that Railroad's purported easement does not preclude Buncher from satisfying Section 909.01.D.1, we need not address Railroad's argument that common pleas erred in holding that it lacked a valid easement."). I also agree that a rail easement does not interfere with the control needed for purposes of complying with the requirements of an SP District. However, I disagree that the issue of whether Railroad has a valid easement does not need to be addressed. In my view, the easement issue must be addressed, because, if Railroad's easement is valid, Buncher may not develop the property in a manner inconsistent with Railroad's easement.

Accordingly, I agree that a rail easement does not preclude Buncher from having the required one hundred percent control over its property, but I disagree that the validity of Railroad's easement need not be addressed and would remand to the trial court for further findings regarding whether Railroad has a valid rail easement.