# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francesco Lazzarini,                 :
                    Appellant        :
                                     :     No. 1825 C.D. 2017
          v.                         :     Argued: September 18, 2018
                                     :
The Board of Supervisors of Bushkill :
Township                             :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge (P)
           HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                      **FILED: January 4, 2019**

In this land use matter, Francesco Lazzarini (Owner) appeals an order of the Court of Common Pleas of Northampton County[1] (trial court) that denied his appeal from a decision of the Board of Supervisors (Board) of Bushkill Township (Township) denying his application for conditional use approval to install a private use heliport on his residential property. The Board determined Owner failed to meet the Township's Zoning Ordinance's (Ordinance) requirements for a private use heliport. The Board further determined Owner's proposed heliport failed to meet the Ordinance's limits on sound and vibrations affecting neighboring homes, and that it would have an overall negative effect on the desirable character of an existing residential neighborhood. Owner contends the Board erred or abused its discretion in finding: (1) the proposed heliport would negatively impact the neighborhood where Owner demonstrated compliance with the Ordinance's objective criteria and the objectors failed to meet their burden of establishing any abnormally adverse

---

[1] The Honorable Emil Giordano presided.

effects; (2) the proposed heliport was commercial in nature and not a private use heliport; (3) the sound and vibrations from Owner's use of the proposed heliport would have a significant negative impact on the desirable character of the surrounding neighborhood; and (4) the proposed heliport would stigmatize the neighborhood thereby having an overall negative effect on the neighboring properties.  Upon review, we affirm.

## I. Background
## A. Generally

Owner and his wife own a 12.5-acre property located at 1201 Seifert Road in the Township.  The property is located in an RR (Rural Residential) Zoning District and lies adjacent to the Bushkill Terrace II Subdivision, a residential development.  In May 2016, Owner filed an application for conditional use approval to install a heliport on the property.  Section 503(F) of the Ordinance specifically provides for a private use heliport as a permitted conditional use in an RR District.  See Reproduced Record (R.R.) at 940.  Section 1602(W) of the Ordinance sets forth additional requirements for a private use heliport.  Id. at 944.

## B. Board Hearings

The Board held four public hearings during which it heard testimony and legal argument.  Owner is a graduate of Italy's Naval Academy and the U.S. Navy Flight School.  He possesses an Airline Transport Pilot Certificate entitling him to fly any helicopter with a weight category of less than 12,500 pounds.  Owner is the Chief Operating Officer and Director of Operations for Heliflite Shares, LLC (Heliflite), which provides helicopter transportation in the Northeast, Chicago and

2

Florida. Heliflite owns seven helicopters and manages two others. Heliflite stores five or six helicopters at Newark Liberty International Airport, one at a heliport in downtown Chicago and one in West Palm Beach, Florida during the winter. A large share of Owner's business involves transporting clients in and around the New York City area.

Owner sought approval for 25 take-offs and 25 landings per year at the proposed heliport. In addition, Owner would only use the heliport during daylight hours. Owner testified he pilots two types of helicopters: a Bell Model 430 (Bell 430) and a Sikorsky Model S-76 (Sikorsky 76). The Bell 430 is a twin-engine cabin class aircraft that seats up to two pilots and six passengers. It is powered by two Rolls Royce turbines and has a maximum speed of 155 miles per hour with a range of 250 nautical miles. The slightly larger Sikorsky 76 is a medium-sized commercial utility helicopter. It has twin turbo shaft engines, four-bladed main and tail rotors, and retractable landing gear. It seats up to two pilots and it can transport, based upon its configuration, up to 13 passengers. Owner testified he would use the Bell 430 for 70 percent of the flights and the Sikorsky 76 for 30 percent of the flights.

Owner also submitted the testimony of Norman R. Dotti, P.E. (Acoustical Engineer), a consulting acoustical engineer with over 40 years of experience with sound and vibration measurement, analysis and control. Acoustical Engineer testified that Owner's 25 take-offs and 25 landings (50 total operations) using the Bell 430 and Sikorsky 76 would generate 78 percent less total sound exposure than that generated by a smaller four-seated, piston-engine-powered helicopter at a previously approved private use heliport in the Township, hereinafter

3

referred to as the Villone case, where 1,040 annual flights (total operations) were approved.

In addition, Owner submitted the testimony of Raymond Alan Syms (Aeronautical Consultant), an aviation liability expert who testified in local, state and federal courts on the safety aspects of the operation of helicopters and heliports. Aeronautical Consultant testified regarding the various state and federal approvals Owner obtained for the proposed heliport.

Eric Michelman (Intervenor) also testified. Intervenor's home lies adjacent to Owner's property and 236 feet from the proposed heliport's pad. Intervenor raised issues of noise, vibration and safety. Intervenor also submitted the testimony of James Dougherty (Appraiser), a state-certified real estate appraiser. Appraiser testified that based upon his experience, research and a review of reports from damage cases in which he was involved, the operation of the proposed heliport would be a negative external influence on Intervenor's property, and it would result in a diminution in the value of that property and others nearest the heliport.

The Board also heard testimony from approximately 20 other persons expressing concerns that focused primarily on issues of safety, noise, vibration and the potential to disturb the quality of life for individuals, senior citizens and wildlife residing in the proposed flight path of the helicopters accessing the proposed heliport.

## C. Board Decision

Ultimately, the Board found that the Bell 430 and Sikorsky 76 helicopters Owner intended to fly to and from the proposed heliport were not personal use helicopters. Bd. of Supervisors of Bushkill Twp. Op., 12/1/16, Findings of Fact (F.F.) Nos. 5, 12, 13. Owner acknowledged that these helicopters are used for commercial passenger service. F.F. No. 5. The Bell 430 can carry up to six passengers. Id. Owner's Sikorsky 76 is configured to carry seven to eight passengers. Id. However, it is designed to carry up to 13 passengers. Id.

The Board noted that in the Villone case, it approved a much larger and more remote site within the Township for a private heliport for a smaller Robinson R-44 (Robinson 44) helicopter. F.F. No. 6. The Robinson 44 is powered by a piston engine similar to that in a car. Id. It has room for a pilot and three passengers. F.F. No. 8. In contrast, as Aeronautical Consultant testified, the Bell 430 and Sikorsky 76 are powered by louder and larger twin turbine engines. F.F. Nos. 7, 11, 13.

In addition, the Board determined Owner uses the helicopters for commercial purposes. F.F. No. 9. In particular, Owner testified he uses the helicopters to fly "transport clients" primarily in the New York City area. F.F. No. 10. Typically, Owner would fly the helicopter home after dropping off a client at Newark or some other airport. Id. However, Owner testified he might also use the heliport to fly guests to Harrisburg or pick them up in Philadelphia. R.R. at 97. Consequently, the Board found Owner's proposed use violated Section 1602(W)(5) of the Ordinance, which limits a private use heliport to "the owner of the lot and his/her family." F.F. Nos. 9, 19.

The Board further found the proposed heliport violated the general standards for a conditional use in Section 1601(C) of the Ordinance. Pursuant to Section 1601(C)(5), a conditional use may not "<u>significantly negatively affect the character of an existing residential neighborhood</u>." R.R. at 942 (emphasis added). The Board determined that take-offs and landings of the Bell 430 and the Sikorsky 76 at the proposed heliport site would have a significant negative impact on the desirable character of the Bushkill Terrace neighborhood. F.F. Nos. 13, 14. Vibrations from the helicopters' take-offs and landings would have a significant negative impact on the adjacent residential homes. F.F. No. 14.

Additionally, the Board noted, the close proximity between the proposed heliport's pad and Intervenor's house would have significant negative noise, vibration and safety effects upon Intervenor's family's peaceful use and enjoyment of its property. F.F. No. 15. The Board credited Appraiser's testimony that the placement and operation of the proposed heliport will have a negative external influence on Intervenor's property. F.F. Nos. 16, 17. In fact, it would result in the diminution of the value of Intervenor's property, and it would stigmatize the existing residential neighborhood, which would result in a significant negative effect on its desirable character. F.F. No. 17.

Further explaining its determinations, the Board cited Section 1101 of the Ordinance, which sets forth performance standards for vibration applicable to all districts. Section 1101 provides (with emphasis added):

> **VIBRATION.** <u>No use shall generate vibration that is perceptible to an average person through his/her senses, without the use of measuring instruments, on private</u>

6

> property beyond the exterior lot of the use generating the vibration. This requirement shall not apply to occasional non-routine blasting that may be necessary during the construction of streets, structures and utilities.

R.R. at 941.

The Board also determined that Owner failed to establish that the proposed heliport is a "private use heliport as defined and contemplated by the [Ordinance]." F.F. No. 19 (emphasis added). To that end, the Board noted Owner intends to use helicopters designed for commercial rather than private use, to be used by Owner "during the course of his business/commercial activities, and, by his own testimony, not limited to himself and his family." Id. Therefore, the Board determined Owner failed to establish the proposed heliport would be for private use only as described by Section 1602(W)(5) of the Ordinance. Id.

Consequently, the Board concluded that Owner's proposed heliport: failed to meet the general standard in Section 1601(C)(5) of the Ordinance, which specifies that the conditional use will not significantly negatively affect the desirable character of an existing residential neighborhood. Conclusion of Law (C.L.) No. 5. The Board further determined the proposed heliport did not comply with the definition and parameters of a private use heliport as specified in Section 1602(W)(5) of the Ordinance and, thus, does not comply with the spirit, intent and purpose of that provision. C.L. No. 6. Also the proposed heliport does not comply with the general performance standards for vibration in Section 1101 of the Ordinance. C.L. No. 7. Accordingly, the Board denied Owner's conditional use application for a private use heliport. C.L. No. 8.

7

## D. Trial Court Decision

Owner appealed to the trial court, and Intervenor filed a petition for intervention, which the trial court granted. Owner also filed a motion to hear additional testimony and take additional evidence, which the trial court denied. The trial court denied Owner's appeal and affirmed the Board's order. Owner appealed to this Court.[2]

## II. Discussion
## A. Argument

On appeal, Owner contends the Board erred or abused its discretion in finding: the proposed heliport was commercial in nature and not a private use heliport; the proposed heliport would negatively impact the neighborhood even though Owner demonstrated compliance with the Ordinance's objective criteria and the objectors failed to meet their burden of establishing any abnormally adverse effects; the sound and vibrations of the proposed heliport would have a significant negative impact on the desirable character of the surrounding neighborhood; and the proposed heliport would negatively stigmatize the neighborhood thereby resulting in a diminution of the value of the neighboring properties.

---

[2] Where, as here, the trial court did not take additional evidence, our review is limited to determining whether the Board committed an abuse of discretion or an error of law. Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp., 840 A.2d 484 (Pa. Cmwlth. 2004). Further, we note that the Board, as the fact-finder here, maintains exclusive jurisdiction over matters of credibility and evidentiary weight. Id. Therefore, the Board may reject even uncontradicted testimony if it finds it lacking in credibility. Id. On review, this Court will not engage in fact-finding or reweigh the Board's credibility determinations. Id.

## 1. Private Use Heliport

Owner contends the Board erred and abused its discretion in determining that the proposed heliport "failed to comply with the definition and parameters of a private use heliport …." See Bd. Op., C.L. No. 6. In particular, the Board noted that Owner testified the helicopters would not be used solely by himself and his family. Id. The Board further observed that the type of helicopters Owner would use, and the manner in which Owner would use them, are more commercial in nature than private. Id. Thus, the Board concluded that the proposed use failed to comply with the spirit, intent and purpose of the private use heliport provisions of the Ordinance.

Owner asserts the Board's determination is erroneous because it focuses on the type of helicopters being used and the number of passengers they can carry. Owner argues these considerations are irrelevant in determining whether the proposed heliport meets the Ordinance's definition of a private use heliport. The definition in Section 201 of the Ordinance does not mention the type, model or size of the helicopter, and does not prohibit an owner or operator from transporting friends in addition to family members.

In other words, Owner argues, the Board erroneously found the heliport to be a commercial use heliport based on the size of Owner's helicopters, not the proposed use of the heliport. Although Owner works in the helicopter transportation industry, he testified he would only use the heliport to come home from work after he dropped off a customer. However, Owner would not use the heliport to transport any customers or clients. See R.R. at 419. Further, Owner would not fly to a

9

customer or client site from the heliport.  Id.  Rather, he would fly only to his place of business in Newark or to wherever his family wanted to go.  Id.

In addition, Owner testified he may transport friends or guests in addition to his family.  However, this would be for a private, non-commercial purpose.  Although the Ordinance stated that take-off and landing privileges shall be limited to the owner and his or her family, Owner asserts there is no restriction prohibiting an owner from transporting friends in the helicopter.  To that end, Owner argues, a fair reading of the Ordinance indicates it was intended to prevent those who are not owners/operators from operating a helicopter at the heliport.  It was not intended to prevent an owner/operator from transporting friends or guests from the heliport.  As support for his position, Owner points out that in 2015, in the Villone case, the Board approved a heliport and specified that the owner could transport a guest.  Owner further notes that the Board could have added a condition prohibiting transportation of anyone outside of Owner's immediate family.

In sum, Owner argues his testimony only supports a finding that the intended use of the heliport is private rather than commercial in nature.  As such, Owner contends the Board erred in focusing on the type of helicopters Owner uses instead of the nature of the use.

### 2. Negative Effect on Character of Neighborhood

Owner also contends the Board erred or abused its discretion in finding the proposed heliport, a permitted conditional use, would negatively impact the desirable character of the residential neighborhood because Owner demonstrated

compliance with the Ordinance requirements.  Owner argues Intervenor, Appraiser and the other objectors failed to present any substantial, non-speculative evidence showing the proposed heliport would have a substantial negative effect on the neighborhood beyond that of an ordinary private use heliport that meets the objective requirements in the Ordinance.  See Rural Area Concerned Citizens, Inc. v. Fayette Cty. Zoning Hearing Bd., 646 A.2d 717 (Pa. Cmwlth. 1994) (objectors cannot meet their evidentiary burden of showing the proposed use will have a general detrimental effect on the community by merely speculating as to possible harm; rather, objectors must show a high degree of probability that the proposed use will substantially affect the health and safety of the community).  Therefore, Owner asserts the Board's determination that the proposed heliport would have a significant negative effect on the surrounding neighborhood, beyond that of any other heliport permitted as a conditional use, constitutes an abuse of discretion in that it is not supported by the record.

### 3. Sound and Vibrations

Owner further contends the Board erred in determining that the evidence supported a determination that sound and vibrations from Owner's take-offs and landings would negatively affect the quality of life in the surrounding area, negatively affect the desirable character of an existing residential neighborhood and negatively affect the quality of life of neighboring individuals.  See F.F. No. 18. Owner relies on Acoustical Engineer's testimony that the total sound exposure from 50 annual operations of the Bell 430 and Sikorsky 76 would be only 78 percent of the approved 1,040 annual operations of the Robinson 44 helicopter on the Villone property.  See R.R. at 187, 197-98.  Further, the maximum sound of a helicopter,

11

which is equivalent to that heard when pushing a lawnmower, lasts only 20 seconds. Id. at 194.

Owner further asserts Intervenor and the other objectors merely presented lay testimony from neighbors who observed Owner's test landings at the proposed site. Owner argues the objectors' unreliable and biased testimony as to the sound and vibrations was solely motivated by the objectors' desire to see Owner's application denied. Thus, Owner avers, the Board should have entirely disregarded the objectors' lay opinions as to sound and vibration.

Summarizing, Owner argues, given Acoustical Engineer's credible testimony and the complete lack of any expert testimony to the contrary, the Board erred and abused its discretion in concluding that the proposed heliport would negatively impact the quality of life in the surrounding neighborhood or have a negative impact that exceeds the impact of any other heliport that met the Ordinance's objective standards for a private use heliport.

**4. Stigmatization/Negative Effect on the Neighborhood**

In his last argument, Owner contends the Board erred and abused its discretion in finding that the proposed heliport would significantly negatively affect the surrounding residential neighborhood based on speculative testimony from Appraiser that the heliport would cause a reduction of property values in the Township. Owner points out that Appraiser did not produce any evidence that the Villone heliport caused any reduction in property values in the Township. To that

end, Appraiser testified he did not examine any real estate actions in the surrounding area following the approval of the Villone heliport. See R.R. at 586-87.

Owner further contends Appraiser based his opinion on research he performed, and on studies he found concerning diminution in property value associated with public airports rather than private heliports. Id. at 610-11. Appraiser acknowledged that his research did not show anything on private heliports and property valuation. Id. at 613. Appraiser further admitted there is no data showing a diminution in property value as a result of the approval of a private heliport. Id. at 614. Therefore, Owner argues, Appraiser's testimony regarding a diminution in property value resulting from the proposed heliport was entirely based on speculation and a correlation between diminution in value resulting from public airports rather than private heliports.

Thus, Owner asserts, if Intervenor or the objectors produced evidence of a reduction in property values of properties adjacent to the Villone heliport or a different private heliport in a surrounding county, such evidence would support the Board's findings as to a diminution in property values. However, the Board erroneously relied on Appraiser's unsupported and speculative statements to find the proposed heliport would result in a diminution in the property values of the surrounding neighborhood. Owner further points out that Appraiser's primary area of practice is the Philadelphia area and that he never performed an appraisal in Northampton County.

Summarizing, Owner argues that Appraiser's failure to inspect real estate transactions following the Villone heliport approval, his lack of experience in Northampton County and the completely speculative nature of his testimony renders it inadequate to support the Board's determination that the proposed heliport would significantly negatively affect the surrounding residential neighborhood.

## B. Analysis
### 1. Conditional Uses Generally

Section 913.2 of the Pennsylvania Municipalities Planning Code[3] (MPC) authorizes municipalities to make exceptions to their zoning ordinances, in the form of conditional uses, as long as the ordinance sets forth express standards and criteria governing such exceptions. Marquise Invs., Inc. v. City of Pittsburgh, 11 A.3d 607 (Pa. Cmwlth. 2010). The existence of a conditional use provision in a zoning ordinance reflects legislative acceptance that the proposed use is consistent with the zoning plan. Id. A conditional use should only be denied where the adverse impact on the public interest surpasses that which might be expected from the use under normal circumstances. Id.

Thus, when examining a conditional use application, a local governing body must employ a shifting burden of persuasion. Id. First, the applicant must persuade the local governing body that its proposed use is a type permitted by conditional use and the proposed use complies with the ordinance's requirements for that conditional use. Id. If it does so, a presumption arises that the proposed use is

---

[3] Act of July 31, 1968, P.L. 805, as amended, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10913.2.

consistent with the general welfare. Id. The burden then shifts to the objectors to rebut the presumption by showing, to a high degree of probability, that the proposed use will adversely affect the public welfare in a way not normally expected from that type of use. Id.

In Marquise, this Court discussed our seminal decision in Bray v. Zoning Board of Adjustment, 410 A.2d 909 (Pa. Cmwlth. 1980), which clarified the rules regarding the duty to present initial evidence and the burden of persuasion in special exception (and conditional use)[4] cases. With respect to the requirements applicable to a conditional use, including the specific requirements applicable to all uses permitted by the ordinance, the applicant has both the duty to present evidence and the burden of persuasion. Marquise. With respect to general detrimental effects on the health, safety and welfare of the neighborhood, the objector has both the duty to present evidence and the burden of persuasion. Id. However, the terms of an ordinance may shift the burden of persuasion, but not the duty to present evidence, to the applicant. Id. With respect to general policy concerns as to harmony with the spirit, intent or purpose of the ordinance, the objectors have both the duty to present evidence and the burden of persuasion, regardless of the terms of the ordinance. Id.

Here, Owner asserts he established that the proposed heliport complied with the objective standards in Section 1601(C) and Section 1602(W) of the

---

[4] Conditional uses and special exceptions are both uses conditionally permitted by zoning ordinances. Marquise Invs., Inc. v. City of Pittsburgh, 11 A.3d 607 (Pa. Cmwlth. 2010). They differ only in the fact that conditional uses fall under the jurisdiction of a municipal governing body whereas special exceptions are decided by zoning hearing boards. Id. The law regarding conditional uses and special exceptions is virtually identical. Id.

Ordinance, including the minimum lot area, minimum setback and hours of operation. Further, Owner contends Intervenor and the other objectors failed to present sufficient material evidence that the proposed use would affect the neighborhood more than any other heliport that met the objective standards of the Ordinance.

## 2. Applicable Ordinance Provisions

Section 1601(C)(5) of the Ordinance, which sets forth general standards for all conditional uses and special exceptions, provides: "Neighborhood. Will not significantly negatively affect the desirable character of an existing residential neighborhood." R.R. at 942. This is a common zoning ordinance provision. See, e.g., Allegheny Tower Assocs., LLC, v. City of Scranton Zoning Hearing Bd., 152 A.3d 1118 (Pa. Cmwlth. 2017).

Section 503(F) of the Ordinance permits a "Private Use Heliport" as a conditional use in an RR District. R.R. at 940. Section 201 of the Ordinance defines "Heliport, Private Use:"

> An area of land which is designed, used, or intended to be used, for the landing and take-off of helicopters, on which usage is restricted to the owner and/or operator or to persons authorized by the owner and/or operator, which includes any appurtenant areas designed to be used for helicopter support facilities such as maintenance, refueling and parking, and which meet all applicable State and Federal regulations and receives approval from the Federal Aviation Administration and the Pennsylvania Bureau of Aviation.

16

Id. at 938. Section 1602(W) of the Ordinance, relating to additional requirements for a "Heliport, Private Use," provides in pertinent part (with emphasis added):

> 5. Said heliports are to be PRIVATE USE HELIPORTS ONLY (see definition), and use, access, <u>take-off and landing privileges shall be limited to the owner of the lot and his/her family</u>. A maximum of only one transient helicopter may use the heliport per day.

Id. at 944.


### 3. Objective Ordinance Requirements; Private Use Heliport

Owner first contends he met all the objective requirements for a private use heliport, thereby shifting the burden of proof to Intervenor and other objectors to show the proposed heliport would have a significant negative effect on the surrounding neighborhood, beyond that of any other heliport permitted as a conditional use.

To a certain extent, there is merit in Owner's argument on the objective requirements issue. The objective criteria for a private use heliport include minimum acreage, set back distances, hours of operation, administrative agency approvals, and limited take-off and landing privileges, with which Owner complies. The objective criteria do not clearly limit the engine size, engine type, engine number, number of passengers or pilots the helicopters are capable of accommodating, or the incidental presence of non-commercial social guests in the helicopters.

17

While the Township could have included other objective criteria in its definitional sections, it was also authorized to control the private heliport use in different, more flexible ways. It did so here through its general standards and performance standards, which we discuss below. Thus, even if Owner were to prevail on this issue, he would still need to satisfy the general standards and performance standards before he would be entitled to relief.

**4. General Standards; Noise; Vibrations; Negative Effect on Neighborhood**

Section 1601(C) of the Ordinance, which sets forth general standards for all conditional uses and special exceptions, provides in part: "5. Neighborhood. Will not significantly negatively affect the desirable character of an existing residential neighborhood." R.R. at 942. As noted above, this is a common zoning ordinance provision, see Allegheny Tower Assocs., and it is one of the different, more flexible ways in which the Township can control private heliports, and other conditional and special exception uses. Because this provision relates to general detrimental effects to the health, safety and welfare of the neighborhood, and because the zoning ordinance does not clearly place the burden regarding this criterion on an applicant, Intervenor and objectors bore both the initial evidence presentation duty and the persuasion burden. Id. (citing Bray). Testimony based on specific past experiences can satisfy this burden. Id. (citing Oasis v. Zoning Hearing Bd. of S. Annville Twp., 94 A.3d 457 (Pa. Cmwlth. 2014)).

Similarly, Section 1601(C)(7) provides "7. Performance Standards. Will not have a serious threat of inability to comply with the performance standards of this Ordinance, as stated in Articles 10 and 11." R.R. at 943.

18

Section 1101 of the Ordinance, pertaining to performance standards for vibration applicable to all uses in all districts, provides (with emphasis added): "No use shall generate vibration that is perceptible to an average person through his/her senses, without the use of measuring instruments, on private property beyond the exterior lot of the use generating the vibration." Id. at 941.

**(a) Negative Effect on Character of the Existing Residential Neighborhood**

In Finding of Fact No. 18, the Board found that use of the heliport and operation of the helicopters as Owner proposed would negatively affect the quality of life in the surrounding area, the desirable character of an existing residential neighborhood and the quality of life of neighboring individuals.

It is undisputed that Owner's proposed heliport would be located adjacent to an existing residential development. Many of the houses in this neighborhood are within 300 to 600 feet of the proposed heliport. Intervenor's house is only 236 feet from the proposed helipad.

Intervenor testified he purchased a single-family home in Phase II of the Bushkill Terrace subdivision. Intervenor's house is 236 feet from the edge of the helipad. R.R. at 435. Notably, the helipad is closer to Intervenor's house than it is to Owner's house. Id. Intervenor further testified there are a lot of people living in the subdivision. Id. at 436. Intervenor also testified the noise from Owner's helicopter landing was very loud and shook his windows. Id. at 438. Intervenor stated he is of normal sensitivity, and he thought that an average person would find the landing noise upsetting. Id. at 439.

19

Sherron Quinn, another resident of Bushkill Terrace, testified she heard a loud noise while in the shower on a Sunday morning and became scared because her house was vibrating. Id. at 523. Quinn finally figured out it was the helicopter leaving. Id. Quinn also recalled that the helicopter returned that evening again making a lot of noise. Id.

Ross McCartney, another resident of Bushkill Terrace, testified that on two occasions when Owner landed, the windows in his house shook so badly that a piece of trim came loose on the window. R.R. at 516. McCartney described the landings as follows:

> Well, at first off, I didn't know what was going on, it shook, all of my windows started to rattle. We heard a very loud noise. I got in the back of my house. I have a sun room with a window probably about five foot [sic] wide by six feet tall, that window was shaking so bad, there is a small piece of plastic, the trim on the door that had popped out. I became very concerned that if this continues will I have any structural window issues going forward. He's talking about landing 25 times throughout the year. I didn't know what was going on until I actually saw the helicopter landing down in his yard.

Id. at 516-17.

McCartney characterized the noise as disturbing and extremely disruptive, noting it occurred during a family picnic gathering. Id. at 517. McCartney believed the landing noise would be disturbing to a person of normal sensitivity such as himself. Id.

Further, Appraiser offered his opinion that Owner's proposed heliport would be a negative external influence on Intervenor's property and would result in diminution in the property's value. Id. at 604. To that end, a prospective buyer of a family home would not want to buy a property next to a heliport if a similar property would be located a mile or two away. Id.

General testimony by objectors regarding aesthetic concerns and a potential decrease in property values may not satisfy the proof required by the general standards for a special exception or conditional use specified in Section 1601(C)(5) of the Ordinance. See Allegheny Tower Assocs. However, given the specific, experienced-based evidence by Intervenor and objectors in the present case, see id., the record supports the Board's Finding of Fact No. 18 and Conclusion of Law No. 5, which state that Owner's proposed use fails to meet the requirement that the proposed use will not significantly negatively affect the desirable character of an existing residential neighborhood.

In addition, we reject Owner's contention that Intervenor and objectors failed to produce substantial, non-speculative evidence showing the proposed heliport would have a substantial, negative effect on the neighborhood beyond that of an ordinary private use heliport.

In Findings of Fact Nos. 10 and 19, the Board found that the helicopters Owner intends to fly to the proposed heliport are commercial helicopters his company uses for commercial passenger service. Owner does not dispute this fact; he sought to fly both the Bell 430 and the Sikorsky 76 to the proposed heliport. R.R.

21

at 34. He may use the company helicopter to fly commercial passengers during the day and then fly the helicopter home at night. Id. at 94-95. As such, the record supports the Board's finding that the Bell 430 and Sikorsky 76 helicopters are designed for commercial use, not for personal and private use. Moreover, the record supports the Board's findings that the Bell 430 and the Sikorsky 76 helicopters are much larger and louder than the Robinson 44 helicopter approved in the Villone case. See R.R. at 540-50.

Further, the proposed heliport is readily distinguishable from the previously approved Villone heliport for a number of reasons. Intervenor testified the 66-acre Villone property is about five times larger than Owner's 12-acre property. Id. at 442. Importantly, there are no residential subdivisions adjacent to the Villone property. Id. at 442-43. Another objector, Leonard Mankowski, testified the Villone heliport is 884 feet from the nearest residence. Id. at 543. In short, there is ample testimony in the record supporting the Board's determination that Owner's proposed heliport use cannot be considered the equivalent of the Villone heliport use as to its negative effects on the surrounding residential neighborhood. See F.F. No. 13.

Here, Intervenor and objectors offered experienced-based proof which was accepted by the Board acting as fact-finder. See Allegheny Tower Assocs. Also, Owner and his witnesses admitted some important factual details about the helicopters proposed to be used. Owner's invitation for this Court on appeal to make different credibility determinations is declined. Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp., 840 A.2d 484 (Pa. Cmwlth. 2004). Accordingly,

22

the record supports a determination that the proposed heliport would have a substantial negative effect beyond that of a previously approved heliport in the Township.

### (b) Performance Standards for Vibration

In Finding of Fact No. 20 and Conclusion of Law No. 7, the Board determined Owner's proposed heliport does not comply with the performance standards for vibration in Section 1101 of the Ordinance. Intervenor testified the noise from the helicopter landing shook his windows. R.R. at 438. Sherron Quinn testified the helicopter's take-offs and landings shook her entire house. Id. at 523. Ross McCartney testified that the helicopter landings shook his house so badly that it rattled the window trim loose. Id. at 516-17. Plainly, this testimony indicates Owner's proposed use would not meet the performance standards for vibration.

Consequently, we discern no error or abuse of discretion in the Board's determination that Owner's proposed heliport use would not meet the performance standards for vibration in Section 1101 of the Ordinance.[5]

### III. Conclusion

For the above reasons, we discern no error or abuse of discretion in the Board's denial of Owner's conditional use application for a private use heliport.

---

[5] Having upheld the Board's determinations that the proposed private heliport does not satisfy certain general standards and performance standards of the Ordinance, it is not necessary to further explore Owner's arguments regarding stigmatization of the adjacent residential neighborhood.

Accordingly, we affirm the order of the trial court denying Owner's appeal.

_____
ROBERT SIMPSON, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francesco Lazzarini,  :
              Appellant  :
                  :   No. 1825 C.D. 2017
           v.  :
                  :
The Board of Supervisors of Bushkill  :
Township  :

# **O R D E R**

**AND NOW**, this 4th day of January, 2019, the order of the Court of Common Pleas of Northampton County is **AFFIRMED**.

 

 

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Francesco Lazzarini,              :
             Appellant        :
                                     :
           v.                :     No. 1825 C.D. 2017
                                     :     Argued: September 18, 2018
The Board of Supervisors of Bushkill   :
Township                           :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE ROBERT SIMPSON, Judge (P)
                  HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY PRESIDENT JUDGE LEAVITT                FILED:  January 4, 2019

          Respectfully, I dissent. Francesco Lazzarini (Owner) satisfied each and every objective standard for a private heliport, which is expressly authorized as a conditional use in the Rural Residential District under Bushkill Township's zoning ordinance.[1] By contrast, the speculative and anecdotal evidence of Eric Michelman (Intervenor) and objectors[2] (collectively, Objectors) did not demonstrate with a high degree of probability that 25 helicopter visits a year to the proposed heliport would ruin the neighborhood where Objectors and Owner live.

          Owner has a helicopter business that operates out of Newark, New Jersey. He commutes by vehicle. He would like to develop a private heliport on his 12-acre property so that he may, from time to time, park a helicopter at his home instead of driving from Newark. Owner owns two helicopters. One is a Bell Model

---

[1] BUSHKILL TOWNSHIP ZONING ORDINANCE, adopted July 19, 2012 (ZONING ORDINANCE).
[2] The objectors are Ross McCartney and Sherron Quinn.

430, that can carry up to six passengers. Notes of Testimony (N.T.), 6/16/2016, at 29; Reproduced Record at 30 (R.R. ___). His other helicopter is a Sikorsky S-76 that can carry up to eight passengers. Owner expects to use the heliport for a maximum of 25 take-offs and landings a year and only during daylight hours. There will be no lights on his proposed heliport. Owner will allow first responders to use his heliport for emergencies.

Notably, the Township has already granted a conditional use permit to an existing private heliport, which is used for over 1,000 takeoffs and landings per year. At present, the owner of this heliport uses it to land a Robinson R44, a single engine helicopter, which seats three passengers and a pilot.[3]

The Zoning Ordinance expressly authorizes private use heliports. It states:

> The following conditional uses and their accessory uses may be permitted by the Board of Supervisors following a review and recommendation by the Planning Commission in accordance with the provisions of Article 1, any applicable provisions for certain specific uses in Article 16 and any other applicable provisions of this Ordinance.

> * * *

> F. Private Use Heliport

ZONING ORDINANCE, §503.F; R.R. 940. A "private use heliport" is defined as follows:

> An area of land which is designed, used or intended to be used, for the landing and take-off of helicopters, on which *usage is restricted to the owner and/or operator or to persons authorized*

---

[3] Owner's expert, Norman Dotti, testified that the Bell 430 is four to five decibels louder than the R44. The S-76 is four or five decibels louder than the Bell 430. N.T., 6/16/2016, at 179; R.R. 180.

*by the owner and/or operator*, which includes any appurtenant areas designed to be used for helicopter support facilities such as maintenance, refueling and parking, and which meets all applicable State and Federal regulations and receives approval from the Federal Aviation Administration and the Pennsylvania Bureau of Aviation.

ZONING ORDINANCE, §201; R.R. 938 (emphasis added). The Zoning Ordinance establishes nine requirements specific to a private use heliport, that range from setbacks to minimum lot size.[4] Helicopters generate noise, but the Township has expressly exempted helicopters from its noise regulations. Section 7(G) of the BUSHKILL TOWNSHIP NOISE ORDINANCE, No. 2009-01, adopted June 4, 2009.

---

[4] Private use heliports must meet the following objective standards:

1. Minimum lot area - 5 acres.
2. Minimum setback of 200 feet from the center of the heliport pad to all lot lines.
3. The heliport must meet all State and Federal requirements and the applicant shall obtain letter of approval from Federal and State authorities.
4. Copies of all application materials filed with Federal and State authorities must also be sent to the Township.
5. Said heliports are to be PRIVATE USE HELIPORTS ONLY (see definition), and use, access, take-off and landing privileges shall be limited to the owner of the lot and his/her family. A maximum of only one transient helicopter may use the heliport per day.
6. Any storage of fuel must be above ground, with a 500-gallon maximum and adequate spill containment capacity.
7. A permit for a private use heliport as a conditional use shall be valid for a period of one year only, and shall be renewed each year after the applicant shows to the Zoning Officer proof of compliance with this Ordinance and any and all State and Federal regulations pertaining to same.
8. The hours of operation shall be from 7:00 a.m. until 10:00 p.m., except for emergency use (such as Medivac).
9. The heliport must be approved for VFR (Visual Flight Rules) only. Takeoffs or landings may only be done under Visual Flight Rule conditions.

ZONING ORDINANCE, §1602.W; R.R. 944.

Owner's proposed heliport exceeds the minimum setback and acreage requirements for a private heliport. Indeed, the proposal satisfied or exceeded each of the nine objective criteria.[5] The heliport will be used strictly for private purposes by Owner to fly himself, his family and occasionally guests. The location for Owner's proposed heliport on his 12-acre property was determined by the Pennsylvania Department of Transportation (PennDOT) to minimize flight paths over houses. Owner's proposed heliport has been approved by both State and Federal authorities. The Court of Common Pleas of Northampton County (trial court) held, erroneously, that Owner did not meet the objective criteria because it mistakenly believed that Owner intended to use his proposed heliport for commercial use. The majority acknowledges the trial court's error, noting that the objective criteria do not "limit the engine size, engine type, engine number, number of passengers or pilots the helicopters are capable of accommodating, or the incidental presence of non-commercial social guests in the helicopters." Majority Opinion at 17.

However, the majority sustains the trial court's holding on other grounds, *i.e.*, that the private heliport will adversely affect the desirable character of Owner's residential neighborhood. With respect, the evidence to support this conclusion is lacking.

A conditional use is one that has been determined by the municipality to be consistent with its zoning plan; it is presumed to be consistent with the public interest. *Aldridge v. Jackson Township*, 983 A.2d 247, 253 (Pa. Cmwlth. 2009). It

---

[5] The Planning Commission recommended approval of Owner's application for a conditional use with two conditions: have trained safety personnel on the ground when the helicopter lands and install a fence around the heliport. N.T., 6/16/2016, at 61-62; R.R. 62-63; *see also* N.T., 7/21/2016, at 93; R.R. 335.

is the applicant's burden to prove that the proposed use complies with the zoning ordinance's objective standards for a conditional use. *Williams Holding Group, LLC v. Board of Supervisors of West Hanover Township*, 101 A.3d 1202, 1212 (Pa. Cmwlth. 2014). Once the applicant does so, he is entitled to approval "unless the [objectors] present sufficient evidence to establish that there is a *high degree of probability* that the use will cause a substantial threat to the community." *In re Cutler Group, Inc.*, 880 A.2d 39, 43 (Pa. Cmwlth. 2005) (emphasis added). Stated otherwise, a conditional use application can be denied only where the proposal deviates significantly from the expected use under normal circumstances. *Marquise Investment, Inc. v. City of Pittsburgh*, 11 A.3d 607, 611 (Pa. Cmwlth. 2010).

Conditional use cases involve shifting burdens of production and persuasion. For the specific requirements applicable to a particular use, the "applicant has both the duty [of production] and the burden [of proof]." *Id*. at 611 (quoting *Bray v. Zoning Board of Adjustment*, 410 A.2d 909, 913 (Pa. Cmwlth. 1980)). On the general standards that relate to health, safety and welfare, "[o]bjectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty." *Marquise*, 11 A.3d at 611 (quoting *Bray*, 410 A.2d at 913).

These principles govern the question of whether Objectors met their burden of proving that it is highly probable that Owner's proposed heliport will have an impact beyond that contemplated by the Zoning Ordinance. Simply, Objectors' evidence did not satisfy this burden.

The majority bases its holding on a "general standard" that applies to every conditional use, not just heliports. The Zoning Ordinance states as follows:

> C. General Standards. The general standards for a special exception or conditional use shall be as follows:

**MHL-5**

* * *

> 5. Neighborhood. Will not significantly negatively affect the desirable character of an existing residential neighborhood.

ZONING ORDINANCE, §1601.C.5; R.R. 942. As the majority observes, this provision relates to the general detrimental effects to health, safety and welfare; accordingly, Objectors carried the burden of presentation and of persuasion on this point. Majority Opinion at 18.

Intervenor, located immediately adjacent to Owner's land, asserted that the use and enjoyment of his property will be "negatively affected." However, the general standard at issue here concerns the neighborhood as a whole, not an individual property, such as Intervenor's property. Intervenor also offered the testimony of a real estate appraiser, who opined that Intervenor's property value could be adversely impacted. He stated,

> [N]ow, I'm not saying this is the number[,] but let's just say it was 10 percent. Well, the house 100 yards away isn't going to be impacted to the degree [Intervenor] is but there is definitely going to be a line.

N.T., 10/20/2016, at 37-38; R.R. 606-607. This is not very definitive. As has been observed, "almost any use, permitted or prohibited, will affect the value of neighboring properties." ROBERT S. RYAN, PENNSYLVANIA ZONING LAW AND PRACTICE §5.3.6 (2003). Any diminution in property values must exceed that which can be expected from a private heliport.[6]

---

[6] In *Jankowski v. Scott Zoning Hearing Board* (Pa. Cmwlth., No. 1719 C.D. 2011, filed June 28, 2012), slip op. at 15-16 (unreported), testimony from a real estate appraiser that a nearby property would experience a five percent decrease in value due to the proposed use was held not sufficient for the objectors to meet their burden of persuasion regarding a decrease in property values. This

MHL-6

The Zoning Ordinance is concerned with the "desirable character" of the "existing neighborhood." *See* ZONING ORDINANCE, §1601.C.5; R.R. 942. Assuming that property values can be read into "desirable character," Intervenor's expert did not address the neighborhood as a whole. He acknowledged that a 100-yard distance from Owner's proposed heliport may have no impact on a property's value. Objectors' evidence did not relate Owner's proposal to the existing private heliport used 1,040 times a year, which is far more relevant to how a heliport impacts a neighborhood's "character." R.R. 702. Simply, Objectors' evidence was not sufficient to establish that it is "highly probable" that Owner's proposal will adversely affect the character of the neighborhood. *See In re Cutler Group, Inc.*, 880 A.2d at 43. Objectors did not meet their burden of production or proof. Simply, the Zoning Board's conclusory "finding of fact" that the proposed heliport will cause a "diminution in value" of Intervenor's house and "stigmatize" the neighborhood lacks the support of substantial and competent evidence. Zoning Board Decision at 11, ¶17.

Another general standard for a conditional use relates to performance. It states:

> 7. Performance Standards. Will not have a serious threat of inability to comply with the performance standards of this Ordinance, as stated in Articles 10 and 11.

ZONING ORDINANCE, §1601.C.7; R.R. 943. The performance standard relevant hereto relates to vibration. The Zoning Ordinance states as follows:

> VIBRATION. *No use shall generate vibration that is perceptible to an average person* through his/her senses, without the use of measuring instruments, on private property beyond the exterior

---

is because the appraiser did not state that any potential diminution in value would be greater than that normally expected from the challenged use.

lot line of the use generating the vibration. This requirement shall not apply to occasional non-routine blasting that may be necessary during construction of streets, structures and utilities.

ZONING ORDINANCE, §1101; R.R. 941 (emphasis added).

Owner's witness, Norman Dotti, was qualified by the Zoning Board as an expert in the area of sound and vibration management. He testified that the noise generated by Owner's helicopters was not "anywhere near [the] magnitude[]" needed to cause vibrations that can shake or vibrate windows. N.T., 6/16/2016, at 214; R.R. 216. He compared the vibration to be experienced at Owner's lot line to that of a lawn mower. Nevertheless, Intervenor and one Objector testified that they felt vibrations when Owner landed a Bell 430 helicopter several times over the course of several days.

First, the Zoning Ordinance requires evidence relevant "to an average person," as Owner's expert testified. ZONING ORDINANCE, §1101; R.R. 941. There is no objective evidence that Intervenor and Objectors are representative of the "average person." Second, Objectors and Intervenor described the location of the landings and take-offs as Owner's "backyard" or "yard." Owner's "yard" is 12 acres in size. Missing was any evidence that the objectionable take-offs and landings took place where Owner has been directed by PennDOT to place his heliport. Third, Objectors' testimony was not definitive that the vibrations were generated while Owner's helicopter was on the ground or while en route to a landing. Only the former matters because the "vibration" regulated by the Zoning Ordinance can only be that attributed to land use. Overflights are beyond the scope of land use regulation authorized by the Pennsylvania Municipalities Planning Code (MPC).[7]

_____

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101 – 11202.

MHL-8

These inadequacies did not deter the Zoning Board from making the so-called "factual" finding that "vibrations from take-off and landing upon adjacent residential homes will significantly negatively affect the desirable character of the neighborhood." Zoning Board Decision at 10, ¶14. This states a conclusion of law. To the extent it states a fact, it lacks the support of substantial evidence.

Notably, the primary complaint of Objectors was noise, but the Township has exempted helicopters from its Noise Ordinance. The idiosyncratic observations of Objectors did not prove that the proposed heliport will produce vibrations beyond Owner's lot line. Simply, their testimony was not sufficient to establish a "serious threat of [Owner's] inability to comply" with the vibration standard set forth in Section 1101. ZONING ORDINANCE, §1601.C.7; R.R. 943. Again, Objectors did not meet their burden of production and proof.

The Zoning Board had authority to attach "such reasonable conditions and safeguards," in addition to those set forth in the Zoning Ordinance, as it deems "necessary to implement the purposes of [the Zoning] Ordinance." ZONING ORDINANCE, §1601.B; R.R. 942. *See also* Section 913.2 of the MPC, 53 P.S. §10913.2.[8] The Zoning Board could have, *inter alia*, simply required Owner to place his heliport at a location more acceptable to Objectors.[9] Or, the Board could have

---

[8] Section 913.2 of the MPC, added by Section 93 of the Act of December 21, 1988, P.L. 1329, *as amended*, states, in pertinent part:

> In granting a conditional use, the governing body may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act in the zoning ordinance.

53 P.S. §10913.2.

[9] At the hearing, Owner indicated that there may be other locations on his property where a heliport could be located. N.T., 6/16/2016, at 86; R.R. 87.

imposed the conditions proposed by Owner, including limits on the hours of operation or the number of take-offs and landings in a day, month or year.[10] Instead, the Zoning Board improperly denied Owner's application.

I would reverse the trial court and remand the matter to the Zoning Board for the issuance of a conditional use permit, with appropriate conditions if it so chooses.

_____
MARY HANNAH LEAVITT, President Judge

---

[10] Before the Zoning Board, Owner submitted a brief with proposed conditions related to frequency of use, hours of operation, safety, noise and type of helicopter.